### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT MILLEDGEVILLE,

### MAY TERM, 1852.

Present—JOSEPH H. LUMPKIN,
HIRAM WARNER, } Judges.
EUGENIUS A. NISBET.

---

No. 46.—ANDREW Y. HAMPTON, survivor, &c. plaintiff in error, *vs.* FRANCIS THOMAS, administrator of John Hampton, deceased, defendant in error.

[1.] In a case where the verdict of the Jury was in favor of the defendant, and there was no evidence applicable to the issue made by the pleadings in his favor, and there was evidence in favor of the plaintiff, a new trial will be awarded, upon the ground that there was no evidence to sustain the verdict.

In Equity, in Laurens Superior Court. Motion for a new trial. Decided by Judge HANSELL, March Term, 1852.

This bill was filed by Andrew Y. Hampton, as surviving partner, against Francis Thomas, as the administrator of John M. Hampton, a deceased partner, alleging that there had been a co-partnership business between said Andrew and John, "in a saw and grist mill, blacksmith shop, stud horse and jackass business," and continued from 1835 to 1841, when the said John M. bought out the interest of Andrew W. in the mills, and paid

him therefor; leaving unsettled the profits of the partnership, amounting to $5000, all of which was in the hands of said John M. when he died. To collect one-half of which, with interest for eight years, this bill was filed against the representative of said John M.

On the trial of this cause, there was in evidence, a letter from Andrew Y. Hampton, to John M. Hampton, dated 23d January, 1847, in which he says: " I do not, upon a settlement, owe you one dollar, but on the contrary, my brother, upon a fair settlement, you owe me very considerable. You yet owe me my mill interest—you owe me for a great deal of hauling—you owe me some borrowed money—you owe me for moving your gin-house and building your screw, &c."

Also a letter from John M. Hampton to Andrew Y. Hampton, dated January 3d, 1847, in which he says: " In regard to what I am owing you, please send in your notes and account to M. G. O'Neal, and I will pay them when presented. In fact I was unapprised (until you notified me) that I was owing you anything, or I would have paid you before you left; or at least, I would have settled and given my note, but I am now able to pay money to almost any amount. I was apprised of the work which you had done—your mill interest and some hauling, which will afford me pleasure to settle for, though the screw pin has bursted two feet round the thread off, but this is a matter of no consequence. I can soon build a new screw, as I have only ginned twenty bales of mine. Time is no object with me at this season of the year." In a postscript he said: " Since writing this letter I have received a ream of paper, in the form of a bill in Equity, against the executors of And. Hampton, J. M. & A. Y. Hampton, stating that they are withholding Rachel Griffin's share of property, and that the executors are insolvent and wants some guardian appointed. Andrew, you must make some arrangement, as I shall make no defence, but turn over every cent and give a true account of the balance. Say to Jack we are sued, and he must pay his part upon the Peter Adams debt. I only have in my hands about twenty-five hundred dollars which be-

long to you, with the interest since you sold your half of the mill to me, and I am anxious to have the matter wound up."

The Jury returned a verdict for the defendant. Counsel for complainants moved for a new trial, on the ground that the verdict was contrary to, and not sustained by the evidence. The Court refused the motion, and this decision is assigned as error.

MORGAN and ROCKWELL, for plaintiff in error.

I. L. HARRIS, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] This is a case where we think the discretion of the Court in refusing a new trial, ought to be controlled; as we think that the verdict for the defendant below, was without evidence for him, and against evidence for the plaintiff. We have repeatedly held that if there is no evidence to sustain the verdict, a new trial will be awarded. This bill was filed by a surviving partner, to recover out of the estate of the deceased partner, the one-half of the effects belonging to the concern, and which are charged to have come into his hands whilst in life, and which now constitute a part of his estate. It charges that the co-partnership was formed in 1835, and continued until 1841, and consisted of the conduct of a saw and grist mill, blacksmith's business, and the keeping of a stud horse and jackass. That in 1841, the complainant sold to his partner, the defendant's intestate, his interest in the mills, *which he paid him for;* that the effects which the firm had made, $5000 in amount, were left in the hands of the defendant's intestate at that time, and that he collected in the debts and realized on all the effects. The prayer is, that the defendant account with the complainant, and pay over to him, the one-half of those effects, with interest. The answer admits the co-partnership—admits that the deceased partner bought the complainant's interest in the mills in 1841, and *paid for it, as charged in the bill.* It does not admit that the intestate took charge of the effects of the firm and realized up-

on them, but puts the complainant upon proof of his allegations as to these matters. From this statement, it is manifest that the pleadings make no issue about the payment of the purchase money for the one-half of the mill interest, sold in 1841 to the defendant's intestate.

The complainant admits in his bill that *that was paid,* and he is estoped by that admission ; he could not aver against it; he could introduce no evidence to prove that it was not paid. He is shut in to the case which he makes. *Peacock vs. Terry,* 9 *Ga. R.* 149, 150. The defendant on the record, who is the administrator upon the estate of the purchaser of that interest, admits *that it was paid as charged in the bill.* Upon the pleadings therefore, it is the judgment of the law, that *that* matter was not in issue, and could not be considered by the Court or the Jury. The conclusion of the law is before the admission of both parties on the record, that the price of the complainant's interest in the mill property, was paid to him by the defendant's intestate, when he bought it in 1841.

The only question made for the Jury by the pleadings, was this : is the estate of the deceased partner indebted to the complainant anything on account of the partnership profits, which had been made prior to its dissolution by the sale of the mill interest in 1841. That was the issue made—to that issue alone can the evidence be applied, and that was the issue upon which the verdict was rendered; it was rendered in favor of the defendant. Our duty is now to enquire whether there was any evidence to authorize that verdict ? If there was none, the re-hearing ought to have been granted by the presiding Judge. The only evidence before the Jury besides the answers (and that contained none except as before stated) was a letter addressed by the complainant to the intestate of the defendant, in 1847, and his response thereto. In his letter, the complainant tells his brother (the intestate of the defendant, he being then in life) *that he does not, upon settlement, owe him one dollar, but that on the contrary, he owes him very considerable.* " You yet owe me (writes the complainant farther) *my mill interest*—you owe me for a great deal of hauling—you owe me some loaned money—you owe me for moving your

gin-house and building your screw, &c." To this letter, after a few days, the defendant's intestate responded; among other things, saying, "In regard to what I am owing you, please send in your notes and accounts to M. G. O'Neal, and I will pay them when presented. In fact, I was unapprised (until you notified me) that I was owing you anything, or I would have paid you before you left; or at least, I would have settled and given my note. But I am now able to pay money to almost any amount. I was apprised of the work you had done—your *mill interest*, and some hauling, which it will afford me pleasure to settle for, &c." Again, in a *postscript*, he says: "Since writing this letter, I have received a ream of paper in the form of a bill in Equity, against the executors of *And. Hampton, J. M. & A. Y. Hampton*, stating that they are withholding *Rachel Griffin's* share of property, and that the executors are insolvent, and want some guardian appointed. *Andrew*, you must make some arrangement, as I shall make no defence, but turn over every cent and give a true account of the balance. Say to *Jack* we are sued, and he must pay his part on the *Peter Adams* debt. *I only have in my hands about twenty-five hundred dollars which belongs to you, with the interest since you sold your half of the mill to me. I am anxious to have the matter wound up.*"

In the letter of the complainant, he claims that his brother is indebted to him, and specifies that he owes him on account of *his mill interest. Answering this letter,* the intestate of the defendant tells him to send his notes and accounts to *M. G. O'Neal,* and he will pay them—which would seem to imply indebtedness. He says then, that he was unapprised that he owed the complainant anything, until notified by him. Whilst this statement implies ignorance of indebtedness, before being notified, it concedes it after he was notified. He then, contradicting his previous statement, that he was unapprised that he owed the complainant anything, says, that he was apprised of the work which he had done—*of his mill interest,* and some hauling, for which he says it will afford him pleasure to settle. In the *postscript,* he makes a distinct admission, that he has in his hands, belonging to the complainant, about twenty-five hundred dollars, with in-

terest, from the sale of the mill interest to him, in 1841, which he declares himself anxious to settle.   In the argument it was insisted that the admission about the *mill interest*, and the admission that he had $2500 in hand, belonging to the complainant, are to be referred to the purchase of his interest in the mills in 1841 ; that the complainant sets up no claim for anything in his bill on account of that sale ; that they are not evidence of the claim which the complainant does make in his bill for the one-half of the partnership effects which came into his hands; that the Jury so considered them ; and these things being so, there was no evidence at all to support the complainant's case, and the verdict ought not, therefore, to be disturbed.   In the absence of the admissions in the record, both by the complainant and the defendant, that the purchase money for the complainant's half of the mill property sold in 1841 *was paid*, I admit that it would be doubtful whether the writer of this letter was speaking of, and referring to that, or the complainant's interest in the proceeds of the partnership before the sale in 1841.   The half of the interest in the mill property, is a *mill interest*, and at the same time the half of the effects or profits which resulted from a partnership in mills, is a *mill interest*.   So that in that event, we could not disturb the verdict.   But by the legal necessities of the pleadings, the inquiry whether the purchase money was or not paid, was not before the Jury.   *It was paid*, as a conclusion of the law, drawn from the admissions in both bill and answer, and the Jury were not at liberty to refer the admissions in the letter to the transaction of the sale.   The learned counsel insists again, that in point of fact the statements in the letter referred to the sale, and if so, they were irrelevant to the complainant's claim for the one-half of the partnership effects, and if irrelevant, there was no evidence to support the complainant's case ; that the Jury had the right so to consider them, and, *therefore*, the verdict for the defendant ought not to be disturbed.   But I apprehend that upon the admission by both parties, that the purchase money for the one-half of the mills was paid in 1841, either out of the Court house or in it, it would be impossible for any one to say, that when six years afterwards, the defendant's intestate admit-

Hampton *vs.* Thomas.

ted that he had in his hands $2500 belonging to the complain-ant, he spoke of $2500 due on account of that transaction of sale. The admissions are obliged to refer to something else. To what else can they refer, than to the interest in mills which the plaintiff claims? It is within the range of possibility, that they may refer to some third account between the parties; but that is altogether conjectural. The Jury were called to apply them to the issue made for their trial; there is no evidence to authorize their application to any other matter. They had be-fore them an acknowledgement that the defendant was indebted on account of a *mill interest.* The complainant's claim, as set forth in his bill, grew out of a partnership *in mills.* They had before them, a distinct admission that the defendant's intestate had in his hands, belonging to complainant, $2500. The com-plainant charged, that he had received five thousand dollars worth of effects, growing out of the partnership *in the mills,* blacksmith's business, &c. one-half of which, belonged to him. Was not the case, *in the absence of any testimony for the defend-ant,* made out for the complainant? We think it was, and are obliged to hold that there was no evidence for the defendant, in whose favor the verdict was rendered.

The defendant's intestate, in the *postscript,* does not speak of the $2500, as a *sum due* for a purchase, as would be natural if he referred to the purchase, but as a *sum in hand* belonging to the claimant, which is also a natural form of expression, where the sum is derived from property of another. The fact that he admits interest upon it to be due since the sale of the one-half of the mills, is laid hold of to prove that the party referred to a sum due on that purchase. But it was at that time that he took in hand the partnership effects, and may very well have conclud-ed in his own mind, that complainant's share of them would bear interest from that time, and therefore, so expressed him-self.

Let the judgment below be reversed.