31642. REYNOLDS v. ESTATE OF R. J. REYNOLDS
et al.
31676. REYNOLDS v. REYNOLDS et al.

NICHOLS, Chief Justice.

These appeals arise from a complaint filed by Marianne O'Brien Reynolds in the Superior Court of McIntosh County against the estate of R. J. Reynolds, deceased, Annemarie S. Reynolds, and others including the State of Georgia.

The plaintiff claims title to Sapelo Island as a result of a handwritten prenuptial agreement between the plaintiff and the late Richard J. Reynolds whereby "for and in consideration of the sum of $10.00 and other valuable consideration" he did convey to the plaintiff all the common stock of Sapelo Plantation, Inc. by bill of sale and further did agree to transfer the stock upon the books of the Sapelo Plantation, Inc. on or before sunset, October 20, 1945. The complaint alleges that the transfer of said common stock from Richard J. Reynolds was tantamount to the transfer of ownership of the 16,000 acres, more or less, of realty lying and situated on Sapelo Island, Georgia

to which said corporation held title. No transfer of such stock ever took place, although Richard J. Reynolds told her that the stock had been transferred.

The complaint alleged in part that on the 20th day of October, 1945, plaintiff was an unmarried female residing in the State of California, and said plaintiff became involved in the romantic attachment with Richard J. Reynolds. As a result of the romantic attachment, Richard J. Reynolds proposed marriage to plaintiff. At the time that the said Richard J. Reynolds proposed marriage to plaintiff, she was a movie star engaged in making and producing motion pictures in Hollywood, California, and earning as a result of her profession, a sizable income in her own right. Richard J. Reynolds entreated plaintiff to forgo her career as a star actress in the motion picture industry and to marry him and return with him, upon his discharge from the armed services of the United States, to Sapelo Island, Georgia, and to live there with him as his wife. Plaintiff, being mindful of the uncertainty of marriage and knowing that Richard J. Reynolds had had a prior unsuccessful marriage, was hesitant to accept the proposal of marriage to Richard J. Reynolds and forgo the lucrative career which she had established for herself in the motion picture industry. In order to entice plaintiff to accept the proposal of marriage, the said Richard J. Reynolds did execute on the 20th day of October, 1945, a handwritten prenuptial agreement with the plaintiff in which Richard J. Reynolds for and in consideration of the sum of $10 and the agreement of plaintiff to marry him, did convey to plaintiff all the common stock of Sapelo Plantation, Inc. by bill of sale and further did agree to transfer the stock upon the books of Sapelo Plantation, Inc. on or before midnight of this date. The transfer of the said common stock from Richard J. Reynolds to plaintiff was tantamount to the transfer of ownership of said 16,000 acres, more or less of realty to which said corporation held title, said realty lying and situate on Sapelo Island, Georgia.

The stock was not transferred on the books of the corporation, although Richard J. Reynolds told the plaintiff that it had been so transferred. During

subsequent years the property was sold, corporations dissolved and new corporations formed, a portion of the property sold to the State of Georgia and other transfers made.

The plaintiff seeks to set aside such deeds, obtain the island, as well as other relief.

Exhibits submitted in support of the motions for summary judgment include copies of the divorce complaint (filed after the "Bill of Sale" was executed) against Richard J. Reynolds by his then wife Elizabeth Dillard Reynolds and the divorce decree dated June 14, 1946.

The judgment of the trial court granting summary judgments to numerous defendants on multiple grounds was dated July 21, 1976. A second summary judgment was granted to other defendants on August 26, 1976, and the appeals are from these judgments. The first ground upon which summary judgment was granted was that the contract was void as being against public policy inasmuch as its consideration was a promise to marry a person then married. As such, the contract was one promoting the dissolving of a marriage in conflict with public policy of Georgia which favors the preservation of marriage.

1. " 'Facts alleged, positively, are constructive admissions in favor of the defendant, of the facts so alleged, and, therefore, need not be proved by other evidence. The plaintiff by introducing them in his bill, and making them a part of the record, precludes himself from disputing their truth, whether they be true or false. The allegations and admissions of the complainant's bill are, therefore, evidence against him.' *Peacock v. Terry,* 9 Ga. 137 (6), 150. See also *Field v. Manly,* 185 Ga. 464, 466 (195 SE 406); *Youngblood v. Youngblood,* 74 Ga. 614 (2); *Hampton v. Thomas,* 11 Ga. 317, 320; *New Zealand Fire Ins. Co. v. Brewer,* 29 Ga. App. 773 (6) (116 SE 922). Under this ruling, the plaintiff was bound by the solemn and unstricken allegation contained in her petition, which was admitted by the answer . . . *East Tennessee Railway Co. v. Kane,* 92 Ga. 187 (5), 193 (18 SE 18, 22 LRA 315)." *Carver v. Carver,* 199 Ga. 352 (1) (34 SE2d 509) (1945). See also *Corr v. Corr,* 213 Ga. 699, 701 (100 SE2d 922) (1957) and cits.

4

Accordingly, those allegations of the plaintiff's complaint which disclose that the handwritten prenuptial agreement between the plaintiff and Richard J. Reynolds was in consideration of the sum of $10 and the agreement of plaintiff to marry him at a time when he was then married to another person cannot be disputed nor can the allegation that the common stock was never transferred on the books of the corporation be disputed.

Under the dissenting opinion of Presiding Justice Atkinson in *Guffin v. Kelly,* 191 Ga. 880, 891 (14 SE2d 50) (1941), adopted by this court in a full bench opinion (*Morgan v. Wright,* 219 Ga. 385, 387 (133 SE2d 341) (1963)), it is required that the judgment of the trial court granting the defendant's motions for summary judgment as to Counts 1 through 6 be affirmed.

The dissent of Presiding Justice Atkinson adopted in *Morgan,* supra, reads as follows: "In 1 Pomeroy's Equity Jurisprudence (4th Ed.), 738, § 397, it is said: 'The maxim . . . he who comes into equity must come with clean hands, . . . assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject matter or transaction in question. It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' In § 401 illustrations are given for application of the principle where the plaintiff's claim is affected by his own fraud. It is said: 'If a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties—a particeps doli, while the agreement is still executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside, and thus restore the plaintiff to the property or other interests which he had fraudulently transferred. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all

affirmative aid to either of the fraudulent participants.' In § 402 illustrations are given for application of the principle where illegality of the transaction was involved and the parties were in pari delicto. It is said: 'The principle is thus applied in the same manner when the illegality is merely a malum prohibitum, being in contravention to some positive statute, and when it is a malum in se as being contrary to public policy or to good morals. Among the latter class are agreements and transfers the consideration of which was violation of chastity, compounding of a felony, gambling, false swearing, the commission of any crime, or breach of good morals.' See *Watkins v. Nugen,* 118 Ga. 372 (45 SE 260); *Deen v. Williams,* 128 Ga. 265 (3, 4) (57 SE 427); 7 Words and Phrases 444, and cit.; 21 CJ 180, §§ 163, 171, 173, 177, 178, and cit.

"The plaintiff Kelly seeks the aid of equity to escape the results of his conduct in causing legal title and possession of the land to be vested in the woman (now Mrs. Guffin), which she afterwards conveyed to her mother, Mrs. Kay. Being himself a married man, his agreement to intermarry with the woman, now Mrs. Guffin, was contrary to public policy which encourages matrimonial harmony. In these circumstances the participation of the plaintiff in the enterprise was contrary to public policy, and with respect to the matter now in question put him in the position of one who under the rules of equity has not clean hands. The case is not altered by the subsequent conveyance by the woman to her mother. The mother as grantee in such conveyance stands in the shoes of the daughter, and, without resort to the merits of the plaintiff's demand, may suggest that the plaintiff comes not with clean hands, and consequently may not enjoy remedies that might otherwise be afforded in equity. If it were otherwise, the wholesome general rule could be avoided wherever there was alienation of the property, notwithstanding the plaintiff's hands remained defiled. In the circumstances equity will not declare a trust in favor of the plaintiff or grant him other relief, but will leave the parties and the property where it finds them, with full legal title vested in the mother."

Under this decision, the trial court did not err in

granting the defendant's motion for summary judgment on the first six counts of the complaint.

2. Count 7 of the plaintiff's complaint alleges that the Sapelo Island Research Foundation, Inc. was formed in order to protect the property owned by Richard J. Reynolds and to preserve the island for the benefit of his heirs and to avoid certain property, estate and income taxes. The evidence adduced regarding this seventh count of the complaint discloses that there was no written instrument which would preserve the island for the benefit of the heirs of Richard J. Reynolds or the plaintiff.

The statute of frauds (Code § 20-401(4)) requires that any contract involving an interest in lands be in writing. While an exception to this rule applies in certain instances where part performance has taken place, yet under the evidence adduced in support of the motions for summary judgment, there had been no performance, and the claim under this count of the complaint was based solely upon an oral promise by Richard J. Reynolds prior to his death and such claim cannot be enforced. Accordingly, the trial court did not err in granting the summary judgments upon this count of the complaint. Compare *Cook v. Pridgen, Stapler & Dunn,* 45 Ga. 331 (1872); *Berolzheimer v. Taylor,* 230 Ga. 595, 600 (198 SE2d 301) (1973).

*Judgments affirmed. All the Justices concur, except Gunter and Hall, JJ., who concur in the judgment only. Hill, J., disqualified.*

ARGUED OCTOBER 13, 1976 — DECIDED NOVEMBER 3, 1976 — REHEARING DENIED NOVEMBER 23, 1976.

*O'Callaghan, Saunders & Stumm, Richard L. Stumm, Gene B. McClure,* for appellant.

*Jones, Bird & Howell, Earle B. May, Jr., Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Bennett, Gilbert, Gilbert, Whittle, Harrell & Gayner, Wallace E. Harrell, Miller, Beckmann & Simpson, Daniel H. White,* for appellees.