(817 P.2d 1131)

No. 65,953

JUANITA D. NICHOLS; and DARIO D. NICHOLS, a minor, by and through his Conservator, LILLIAN R. UNDERWOOD, *Appellants*, v. CENTRAL MERCHANDISE, INC. (d/b/a SUPER D DRUGS), *Appellee.*

Opinion filed September 27, 1991.

*John A. Bausch* and *Timothy Pringle*, of Benfer, Bausch & Blumreich, P.A., of Topeka, and *J. H. Eschmann*, of Ascough, Eschmann & Oyler, P.A., of Topeka, for appellants.

*Steve R. Fabert* and *Edwin D. Smith*, of Fisher, Patterson, Sayler & Smith, of Topeka, for appellee.

Before ELLIOTT, P.J., PIERRON, J., and WILLIAM M. COOK, District Judge, assigned.

ELLIOTT, J.: In this personal injury action, it is alleged that Central Merchandise, Inc., d/b/a Super D Drugs, negligently dispensed prescription medication to Juanita D. Nichols which caused bone abnormalities in her subsequently born child, Dario Nichols. Juanita and Dario Nichols appeal the trial court's granting of summary judgment in favor of Super D Drugs. We affirm.

The facts are not in serious dispute. During the first trimester of her pregnancy, Juanita Nichols developed a urinary tract infection. Dr. VandeGarde, aware of her pregnancy, prescribed Gantanol. Super D Drugs filled the prescription and Dario was later born without hands or feet.

The package insert for Gantanol stated:

"Warnings: Usage in pregnancy: The safe use of sulfonamides in pregnancy has not been established. The teratogenicity potential of most sulfonamides has not been thoroughly investigated in either animals or humans. However, a significant increase in the incident of cleft palate and other bony abnormalities of offspring has been observed when certain sulfonamides of the short, intermediate and long-acting types were given to pregnant rats and mice at high oral doses (7 to 25 times the human therapeutic dose)."

The trial court granted Super D Drugs summary judgment on the ground the pharmacy had no legal duty to warn either Juanita Nichols or Dr. VandeGarde of the information contained in the package insert.

Later, plaintiffs settled with the drug manufacturer and, two weeks into a jury trial, plaintiffs settled with all remaining defendants. Plaintiffs appeal only the summary judgment in favor of the pharmacy.

Summary judgment, of course, is appropriate where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. K.S.A. 1990 Supp. 60-256; *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990).

These facts are not controverted: Dixie Wilson, the dispensing pharmacist at Super D Drugs, knew about the statement in the package insert, knew or suspected that Juanita Nichols was pregnant, did not consult with Dr. VandeGarde regarding the advisability of the drug, and did not inform Nichols of the statement contained in the package insert.

Since the existence of a duty on the part of the pharmacy is a question of law, see *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983), the matter was ripe for summary adjudication.

Administrative regulations define a pharmacist's duties as reading and interpreting prescriptions, accurately filling prescriptions, affixing necessary labels, and "initiating oral patient consultation on new prescriptions as a matter of routine to encourage proper patient drug utilization and administration." K.A.R. 68-2-20.

Dixie Wilson attached warning labels to the prescription instructing Nichols to drink lots of water and avoid sunlight. This would seem to satisfy the requirement of encouraging proper utilization and administration of the drug. See K.S.A. 1990 Supp. 65-1637.

The only Kansas case we have found dealing with a pharmacist's duty to warn of possible side effects is clearly distinguishable. See *Fuhs v. Barber*, 140 Kan. 373, 36 P.2d 962 (1934), where the doctor prescribed a lead-based ointment for treatment of a skin irritation. When plaintiff returned to the pharmacy for a refill, the pharmacist recommended a sulphur-based ointment of his own invention. Plaintiff's skin turned black from the reaction between the lead and sulphur. Our Supreme Court held the pharmacist had a duty to warn of the possible drug interaction. *Fuhs v. Barber*, 140 Kan. 373, Syl. ¶ 1.

In sharp contrast in the present case, Super D Drugs did not manufacture the Gantanol dispensed to Nichols and did not "push" or recommend its use.

Manufacturers of prescription drugs do have a duty to warn of dangerous side effects and risks associated with the drugs. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 409, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984). Kansas has also adopted the learned intermediary doctrine, under which the manufacturer's duty to warn is satisfied when the prescribing doctor is informed of a drug's inherent risks. *Humes v. Clinton*, 246 Kan. 590, Syl. ¶ 5, 792 P.2d 1032 (1990).

As the learned intermediary between manufacturer and patient, the doctor must inform himself or herself of a drug's characteristics and determine what facts should be told to the patient. 246 Kan. at 600-02.

In the present case, because the doctor is the learned intermediary between the manufacturer and the patient, the patient should rely on the doctor; the pharmacist, at least under the facts of this case, has no legal duty to warn the patient of potential consequences from the use of the drug prescribed by the doctor. See, *e.g.*, *Pysz v. Henry's Drug Store*, 457 So. 2d 561 (Fla. Dist. App. 1984); *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 485 N.E.2d 551 (1985); *Ingram v. Hook's Drugs, Inc.*, 476 N.E.2d 881 (Ind. App. 1985); *Kinney v. Hutchinson*, 449 So. 2d 696 (La. App. 1984); *Stebbins v. Concord Drugs*, 164 Mich. App. 204, 416 N.W.2d 381 (1987); *Makripodis v. Merrell-Dow Pharm., Inc.*, 361 Pa. Super. 589, 523 A.2d 374 (1987); *McKee v. American Home Products*, 113 Wash. 2d 701, 782 P.2d 1045 (1989).

We emphasize that Gantanol was not contraindicated for use during early pregnancy; the package insert merely stated its effect on a fetus had not been determined.

Because the decision to prescribe a specific drug involves an analysis of the patient's unique condition and a balancing of the risks and benefits of a given drug, the cases extending the learned intermediary doctrine to pharmacists reason that imposing a duty to warn on the pharmacist would intrude on the doctor-patient relationship and would force the pharmacist to practice medicine without a license. See *Eldridge*, 138 Ill. App. 3d at 127. In addition, it would be both illogical and unreasonable to impose a greater duty on the pharmacist dispensing the drug than on the manufacturer of the drug. *Ramirez v. Richardson-Merrell, Inc.*, 628 F. Supp. 85, 88 (E.D. Pa. 1986).

We agree with the Washington Supreme Court, which surveyed the jurisdictions extending the learned intermediary doctrine to pharmacists and concluded:

"The pharmacist still has a duty to accurately *fill* a prescription [citation omitted] and to be alert for clear errors or mistakes in the prescription. The pharmacist does not, however, have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer's package insert." *McKee v. American Home Products*, 113 Wash. 2d at 720.

In the present case, the pharmacist accurately filled Nichols' prescription for Gantanol. There were no clear errors on the face of the prescription, Gantanol was not contraindicated for use by Nichols, and Dr. VandeGarde's decision to prescribe the drug was within the realm of his professional judgment.

Under the facts of this case, Super D Drugs and its pharmacist owed no duty to warn Juanita Nichols or the doctor. Summary judgment was proper.

We need not address the additional issues raised by the parties.

Affirmed.