A93A0691. WALKER v. JACK ECKERD CORPORATION.
A93A0692. KARP v. WALKER.
(434 SE2d 63)

BIRDSONG, Presiding Judge.

Appellant/cross-appellee Wayne E. Walker (Walker) appeals from the order of the state court granting summary judgment to appellee Jack Eckerd Corporation (Eckerd's). Cross-appellant Alan A. Karp, M.D. (Dr. Karp) cross-appeals from the order denying his motion for summary judgment.

This appeal arises from a malpractice action by Walker against Dr. Karp who prescribed a drug, Blephamide, that allegedly injured Walker, and against the pharmacy which dispensed the drug. A package insert issued to pharmacies with the drug warned that prolonged use could result in glaucoma. Dr. Karp, who was then duly licensed to practice medicine in Georgia, twice prescribed Blephamide for Walker. Walker asserts that both of Dr. Karp's prescriptions were "PRN" prescriptions. A "PRN" prescription can be refilled as needed over a lengthy time period, usually not over one year. Dr. Karp denies that he issued either prescription as "PRN," or otherwise refillable. Nevertheless, appellant made averments of fact in his complaint that both the first and second prescriptions, which Dr. Karp telephoned to Eckerd's, were "PRN." Eckerd's dispensed this drug under one of the prescription numbers fifteen times to Walker in less than one year. Walker subsequently was diagnosed with glaucoma, which allegedly was caused by excessive Blephamide prescribed by Dr. Karp and dispensed by Eckerd's. *Held*:

*Case No. A93A0691 (Main Appeal)*

1. The trial court, citing *Reynolds v. Estate of R. J. Reynolds*, 238 Ga. 1, 3 (230 SE2d 842), found that appellant's complaint averred "that defendant Karp telephoned a 'PRN' prescription to defendant Eckerd's drugstore. . . . Defendant Eckerd, in its answer, admits this allegation. As such, [appellant] is bound by the allegation contained in his complaint, which was admitted by the answer."

Appellant's contention that this pleading did not constitute an admission in judicio because it was merely an expression of opinion is

without merit. Although admissions in judicio apply only to admissions of fact and do not apply when the admission is merely the opinion or conclusion of the pleader as to law or fact (*Howell Mill-Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 172 (390 SE2d 257)), examination of the complaint reveals that the admissions as to the "PRN" prescription were unequivocally averred as statements of fact. It is incidental that this averred information may not have originated within plaintiff's personal knowledge; having placed it within his pleading as a statement of fact, appellant cannot escape the effect of his pleading strategy merely by asserting that the pleaded information was based on matters within the knowledge of a third person. Admissions are received in evidence either as a hearsay exception or as non-hearsay (Green, Ga. Law of Evid. (3d ed.), Admissions, § 234); suffice it to say that under either theory admissions are not rendered inadmissible through a claim of hearsay.

A question remains whether an admission in judicio results when conflicting evidence appears elsewhere in the record as to the fact allegedly admitted in the pleadings. Admissions in judicio can be considered in the disposition of summary judgment cases. See generally *Reynolds*, supra; *Four Square Constr. Co. v. Jellico Coal &c. Co.*, 145 Ga. App. 650 (244 SE2d 612).

In *Summerlot v. Crain-Daly Volkswagen*, 238 Ga. 546, 547 (1) (233 SE2d 749), the Supreme Court observed that "[t]he Civil Practice Act provides that when issues not raised by the pleadings *are tried* by express or implied consent of the parties, they shall be treated . . . as if they had been raised in the pleadings" and that "pleadings may be amended so as to conform to the evidence, but failure to so amend does not affect *the result of the trial* on the issues *actually tried*." (Emphasis supplied.) Id. Then after noting that "the issue . . . was considered and determined *on its merits* by the trial judge," the Supreme Court concluded that "we do not consider the alleged typographical error in the complaint to be an admission in judicio that barred the applicant from showing to the contrary." (Emphasis supplied.) Id. at 547. This rationale was followed by this court in *Stephens v. Tate*, 147 Ga. App. 366, 367 (1) (249 SE2d 92), holding that an unwithdrawn admission in the complaint did not constitute a binding admission in judicio supporting grant of summary judgment where the order was hotly contested *and* "the issue was considered and determined *on its merits* by the trial court." (Emphasis supplied.)

In *Space Leasing Assoc. v. Atlantic &c. Systems*, 144 Ga. App. 320 (4) (241 SE2d 438), appellants asserted that the recitation of a certain date in a complaint was a typographical error. This court, purporting to construe *Summerlot*, supra, held: " 'The Civil Practice Act provides that when issues not raised by the pleadings *are tried by*

*express or implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings. It also provides that pleadings may be amended so as to conform to the evidence, but failure to so amend does not affect the result of the trial on the issues *actually tried*. [Cit.]' " (Emphasis supplied.) *Space Leasing*, supra at 326 (4). It was then concluded that "[t]he thrust of this holding, that where a pleading is in conflict with other evidence it will be deemed amended to conform with the evidence, is in accord with the federal courts' construction of Rule 15 (b). These cases have consistently held that pleadings are deemed amended to conform with the evidence whether formally amended or not, even if the allegations of the pleadings are contradictory to the evidence. [Cits.]" Id. at 327 (4); compare *Chester v. State*, 168 Ga. App. 618 (1) (309 SE2d 897). Neither *Space Leasing*, supra, nor *Chester*, supra, address the significant factor discussed in *Summerlot*, supra, that the issue involved in the admission in the pleadings was one actually determined on the *merits* by the trial court. (Moreover, *Chester*, supra, is distinguishable as the issue of ownership of money involved a legal question so that the denial of ownership under the circumstances presented appears to have related to a conclusion of law rather than an admission of fact.) Subsequently, this court in an appeal of a jury verdict, citing both *Summerlot* and *Space Leasing*, held that where a pleading is in conflict with evidence *presented at trial*, it will be deemed amended to conform to the evidence. *Aiken v. Dept. of Transp.*, 171 Ga. App. 154, 155 (1) (319 SE2d 58); compare *Sambo's of Ga. v. First Am. Nat. Bank*, 152 Ga. App. 899, 901 (3) (264 SE2d 330); *Blatt v. Bernath*, 151 Ga. App. 69, 71 (1) (258 SE2d 735). However, this court has held that a party to a suit will not be allowed to disprove an admission made in his pleadings, without withdrawing it from the record, and "[t]he CPA did not wipe out or destroy the law in Georgia to the effect that a party to an action is bound by material allegations made in his pleadings so long as they remain in his pleadings, and the plaintiff's contradictory pleadings, if any, are to be construed in favor of the defendant." *Anderson v. Oakley*, 133 Ga. App. 758, 759 (1) (212 SE2d 875); accord *Four Square Constr.*, supra; *Martin v. Pierce*, 140 Ga. App. 897, 898 (1) (232 SE2d 170) cited and applied without explanation in *Shahan v. Scott*, 259 Ga. 172 (377 SE2d 859). Thus, "[t]he Civil Practice Act did not affect the rule that admissions in pleadings are conclusive." Agnor's Ga. Evid. (2d ed.), Hearsay, § 11-10.

It appears that merely because conflicting evidence may exist as to a given issue of fact, this will not prevent per se a party from making an admission in judicio in his pleadings as to that fact. However, if the trial court admits that conflicting evidence, and either the court (e.g., when ruling on a motion for summary judgment) or the jury (when reaching its verdict) considers the conflicting evidence *on the*

*merits*, the pleadings at that point become amended to conform to such evidence. This is because, by admitting the evidence and allowing the factfinder to consider it, the trial court has in effect, either sua sponte or by overruling an opposing motion, tacitly permitted the pleading party to withdraw the admission contained in the pleadings. Conversely, when the trial court does not allow the conflicting evidence to be admitted or, where applicable, elects not to consider the issue *on the merits*, the admission of fact made in the pleadings remains in full force and effect as an admission in judicio and is conclusive of the fact admitted. See generally OCGA § 24-3-30; cf. *Grant v. Rivers*, 182 Ga. App. 631 (356 SE2d 560), where it was held, "having admitted in his answer to the terms of the agreement as alleged by [appellant], [appellee] was bound thereby and, so long as those admissions remained unstricken or unamended, was estopped to present evidence to the contrary." Basically, the rule vests the trial court with discretion to determine whether an admission of fact made in pleadings should be withdrawn, thereby allowing the pleadings to be amended by conflicting evidence admitted and considered on the merits.

The case at bar is factually distinguishable from the above-cited cases; likewise, it is distinguishable from *Smith v. Doe*, 189 Ga. App. 264 (2) (375 SE2d 477), a case involving the pleading of inconsistent claims in a single pleading. (Green, supra at p. 423, cautions: "Inconsistent pleadings, although permitted by the Civil Practice Act for purposes of the rules of evidence, may constitute an admission or an inference beneficial to the opposite party. . . . Although the Civil Practice Act permits inconsistent pleading as a matter of procedure, the evidentiary effect of inconsistent pleading must be considered and weighed before this practice is employed.")

In this case, the trial court expressly held in its order that "plaintiff [was] bound by the allegation contained in his complaint, which was admitted by the answer." Inherent in this ruling, as further evidenced by the accompanying citation to *Reynolds*, supra, is the trial court's election *not* to allow appellant to withdraw the admission in judicio made in his complaint of the fact that Karp twice telephoned a "PRN" prescription to Eckerd's drugstore, as averred in the complaint. Clearly, the trial court did not dispose of the issue of "PRN" prescriptions *on the merits*. Accordingly, the trial court did not abuse its discretion in entering this finding and treating the admission in judicio as conclusive. *Reynolds*, supra.

2. Appellant asserts the trial court erred in holding that there was no breach of a legally recognized duty on the part of Eckerd's either in failing to warn or in failing to refuse to refill the prescriptions. (By virtue of the admission in judicio in appellant's pleadings it has been conclusively established that the prescriptions were tele-

phoned to Eckerd's by Dr. Karp as "PRN" prescriptions. See Division 1, above.) Whether a duty is owed by one person to another is a question of law to be decided by the courts (making it ripe for summary adjudication); but once a duty is established, the scope of the duty or the standard of care generally is considered a question of fact to be decided by the trier of fact. *Dooley v. Everett*, 805 SW2d 380, 384 (8) (CA Tenn.); *Nichols v. Central Merchandise*, 817 P2d 1131 (1) (CA Kan.); accord *Ingram v. Hook's Drugs*, 476 NE2d 881, 883 (4) (CA Ind.); *Kampe v. Howard &c. Pharmacy*, 841 SW2d 223 (1) (CA Mo.). (The case at bar does not present the question of pharmacies' liability as suppliers for the sale of "over-the-counter" non-prescription products or other articles.)

Neither party has cited and we are not aware of any Georgia statutory authority expressly imposing a duty to warn or to refuse to fill prescriptions upon pharmacists who are provided with manufacturers' literature warning of potential adverse effects if certain drug dosages are exceeded. Compare OCGA § 16-13-73. In fact, OCGA § 26-3-8 (b) specifically excepts certain prescription drugs from various statutory labeling and warning requirements. However, both parties have well-identified the two conflicting lines of authority pertaining to the common-law duty of pharmacists regarding the warning of patients and the refusal to fill prescriptions; the strengths and weaknesses of each position have been ably argued by counsel for both sides. It appears to be a matter of first impression for this court as to the scope of a pharmacist's duty, at the present time in this state, in the dispensing of prescriptions.

Appellant, citing *Docken v. CIBA-GEIGY*, 790 P2d 45, 47 (CA Or.) (pharmacist owes duty to perform compatible to standard of care in the community) and *Dooley*, supra (whether pharmacist owed duty to warn customer was fact question precluding summary judgment), advances what we perceive currently to be a minority view. Appellant has asserted that, assuming arguendo Eckerd's was following the prescription instructions issued by a physician licensed to practice medicine in Georgia, there existed an independent duty on the part of Eckerd's either to warn appellant or his prescribing physician of the dangerous properties of the drug or to refuse to refill and dispense the prescription, and that a jury issue arose as to the breach of such duty. *Docken*, supra; *Dooley*, supra; compare *Riff v. Morgan Pharmacy*, 508 A2d 1247 (SC Pa.).

However, in view of OCGA Title 26, Chapters 3 and 4, the need for preserving, without interference of third parties, a trusted physician-patient relationship, the fact that patients have different reactions to and tolerances for drugs coupled with the fact that the severity of a patient's condition may warrant a different level of risk acceptance, which factors are best monitored and evaluated by doc-

tors, and the public policy of this state for reducing frivolous malpractice actions against professionals (see, e.g., OCGA § 9-11-9.1), we find more persuasive and adopt the rule as announced in *Jones v. Irvin*, 602 FSupp. 399, 402-403 (7) (D.C. S.D. Ill.), to-wit: "A pharmacist . . . owes the customer the 'highest degree of prudence, thoughtfulness, and diligence.' " However, "a pharmacist has no duty to warn the customer or notify the physician that the drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that the various drugs in their prescribed quantities could cause adverse reactions to the customer. It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient, to elicit from the patient what other drugs the patient is taking, to properly prescribe various combinations of drugs, to warn the patient of any dangers associated with taking the drug, to monitor the patient's dependence on the drug, and to tell the patient when and how to take the drug. Further, it is the duty of the patient to notify the physician of the other drugs the patient is taking. Finally, it is the duty of the drug manufacturer to notify the physician of any adverse effects or other precautions that must be taken in administering the drug. [Cit.] Placing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability." Id. at 402 (3-6); see *Eldridge v. Eli Lilly & Co.*, 485 NE2d 551, 554-555 (4) (AC Ill.) (pharmacist has no common-law duty to refuse to fill prescription simply because it is for quantity beyond that normally prescribed or to warn physician of that fact); *Leesley v. West*, 518 NE2d 758 (AC Ill.) (pharmacist has no duty to warn consumer of drugs' dangerous side effects); *Batiste v. American Home &c. Corp.*, 231 SE2d 269 (CA N.C.); *Ullman v. Grant*, 450 NYS2d 955, 956 (3) (SC N.Y.); compare *Kampe*, supra at 226-227 (absent apparent discrepancy on face of prescription, pharmacist has no duty to warn patient; duty fulfilled by properly filling legal prescription as written); *Ramirez v. Richardson-Merrell, Inc.*, 628 FSupp. 85, 88 (3) (DC E.D. Pa.) (imposing duty to warn would place pharmacist between the prescribing physician and the patient); *Garside v. Osco, Inc.*, CA No. 88-974-T (DC Mass.); *Adkins v. Mong*, 425 NW2d 151 (1-2) (CA Mich.) (pharmacist has no duty to warn where prescription proper on face, dispensed according to prescription, and neither physician nor manufacturer requested pharmacist give particular warning; pharmacist has no legal duty to monitor and intervene); *McKee v. American Home Products Corp.*, 782 P2d 1045 (SC Wash.) (no duty to warn, and although pharmacist should have a duty to be alert for incompatible prescriptions, he or she does not have a duty to provide customers with manufacturers' package insert information or to question judgment made by physician as to propri-

ety of prescription); *Pysz v. Henry's Drug Store*, 457 S2d 561 (DCA Fla.) (finding no duty to warn but acknowledging that factual situations might exist which would support negligence action against pharmacist who lawfully filled a prescription); *Stebbins v. Concord &c. Drugs*, 416 NW2d 381, 387 (18) (CA Mich.) (adopting the rule followed in *Pysz*, supra, and *Jones*, supra, that pharmacist has no duty to warn where a prescription is proper on its face and neither physician nor manufacturer has required pharmacist to give a warning) and *Makripodis v. Merrell-Dow Pharmaceuticals*, 523 A2d 374 (6-8) (SC Pa.) (pharmacist not required to provide consumer with such warnings as required to be given to physicians by drug manufacturers) with *Bichler v. Willing*, 397 NYS2d 57 (declining to hold a druggist can never be liable for correctly filling a prescription); *Nichols v. Central Merchandise*, supra at 1133 (5) (no duty to warn patient of potential consequences of drug use "at least" under facts of case); *Frye v. Medicar-Glaser Corp.*, Docket No. 72908 (SC Ill.) (consumers should look principally to prescribing physicians to convey appropriate drug warnings) and *Ingram v. Hook's Drugs*, supra at 885 (decision to warn requires knowledge of medical history and other facts about patient; pharmacist has no duty to warn, except those warnings actually contained in physician's prescription); cf. *Murphy v. E. R. Squibb & Sons*, 710 P2d 247 (1) (SC Cal.) (pharmacist using due care in compounding and labeling prescription drug immune from strict liability); *Coyle v. Richardson-Merrell, Inc.*, 584 A2d 1383, 1386-1387 (SC Pa.) (declining to impose duty upon pharmacists to supply drug risk information; recognizing pharmacists might refuse to fill prescriptions to avoid liability); *Mazur v. Merck & Co.*, 964 F2d 1348, 1356-1357 (5) (dictum).

In adopting this view, we are aware that effective January 1, 1993, the Georgia State Board of Pharmacy imposed certain new drug review and patient counseling rules on pharmacists. Rules of Ga. State Board of Pharmacy, § 480-31-.01. However, this does not alter the legislature's intent prior to these rules to except certain prescription drugs from various labeling and warning requirements. OCGA § 26-3-8 (b). Nor will we here decide whether these rules of the State Board of Pharmacy are mandated by federal law or are in conflict with OCGA § 26-3-8 (b). Suffice it to say that this case is not intended to serve as controlling precedent for cases involving pharmacists' duties arising after January 1, 1993.

We do not here address a situation where a druggist has improperly compounded a drug, filled a legitimate prescription with a different drug than prescribed, or allowed a drug to become infected with some adulterating foreign substance during the course of preparing and filling the prescription. Compare *Pysz*, supra at 562 (2) and *Garside*, supra at IV; *Ramirez*, supra at 88 (4) with *Ullman*, supra at 956

(1-2). Likewise this case is distinguishable factually from *Ferguson v. Williams*, 374 SE2d 438 (CA NC) which held that a pharmacist had no duty to advise absent knowledge of circumstances alerting him to specific facts *and* who thereafter undertook to *advise* the customer giving rise to a duty to advise correctly. The trial court did not err as averred in this enumeration of error.

3. In view of the above, the trial court did not err in granting appellee's motion for partial summary judgment. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474). At best there existed but a shadowy semblance of an issue as to appellee Eckerd's liability. "Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where[, as in this case,] the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." (Citations and punctuation omitted.) *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515).

### Case No. A93A0692

Cross-appellant Karp asserts the trial court erred in denying his motion for summary judgment as there is no genuine issue of fact whether a physician-patient relationship exists between him and appellant. Cross-appellant argues that both of the prescriptions were placed by phone merely as an "accommodation" to cross-appellee, who initially was married to Karp's mother-in-law, and not as a result of an existing physician-patient relationship. Karp did not bill cross-appellee for his services.

In this state "there can be no liability for malpractice in the absence of physician-patient relationship." *Peace v. Weisman*, 186 Ga. App. 697, 698 (1) (368 SE2d 319); see *Rogers v. Coronet Ins. Co.*, 206 Ga. App. 46, 49 (3) (424 SE2d 338).

Generally, it is a question of fact for the jury whether there exists a physician-patient relationship; however, a case may be disposed of by summary judgment where the facts are shown by such clear, palpable, and undisputed evidence that the jury could reasonably draw but one conclusion. Cf. *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 569 (1) (314 SE2d 241). A physician-patient relationship can be established by circumstantial evidence. See OCGA §§ 24-1-1 (4); 24-4-9. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370

SE2d 843). Cross-appellee testified in his deposition that he established a doctor-patient relationship with cross-appellant Karp the first time he inquired about eye drops and the drug Blephamide; he sought out Dr. Karp's counsel; and Dr. Karp gave him certain advice regarding diet and fat intake. Dr. Karp testified in his deposition that, during his first conversation regarding the drug, he warned cross-appellee he did not like him using the drug and advised him to see his ophthalmologist. There exists some evidence of record which would create a genuine issue of fact as to the existence of a physician-patient relationship. The trial court did not err in denying cross-appellant's motion for summary judgment.

*Judgment affirmed. Beasley, P. J., Cooper, Andrews, Johnson and Smith, JJ., concur. Pope, C. J., McMurray, P. J., and Blackburn, J., dissent.*

POPE, Chief Judge, dissenting.

I agree with the majority that, under the common law, a pharmacist has no duty to warn a patient about all possible adverse effects incident to the use of *properly* prescribed medications.[1] Thus a pharmacist has no duty to provide patients with manufacturers' inserts containing drug warnings or contraindications of use or to advise the patient of such warnings. Yet, in my opinion, a pharmacist is and should be more than a mere "warehouse for drugs [or] shipping clerk who must dutifully and *unquestioningly* obey the written orders of omniscient physicians." *Riff v. Morgan Pharmacy*, 508 A2d 1247, 1251 (Pa. Super. Ct. 1986). At a minimum, a pharmacist has a duty to notify the prescribing physician of "obvious inadequacies appearing on the face of the prescription which create[ ] a substantial risk of serious harm to the plaintiff." Id. at 1252. The Washington Supreme Court delineated this limited duty as follows: "The pharmacist . . . has a duty to accurately fill a prescription [cit.] *and* to be alert for clear errors or mistakes in the prescription. The pharmacist does not, however, have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer's package insert." (Emphasis supplied and omitted.) *McKee v. American Home Products Corp.*, 782 P2d 1045, 1055-1056 (Wash. 1989). See also *Kampe v. Howard Stark Professional Pharmacy*, 841 SW2d 223 (Mo. Ct. App. 1992); *Nichols v. Central Merchandise*, 817 P2d 1131 (Kan. Ct. App. 1991); *Stebbins v. Concord Wrigley Drugs*, 416 NW2d 381, 387-388 (Mich. Ct. App. 1987).

---

[1] As the majority notes, this case does not address the issue of the duty of a pharmacist after January 1, 1993, when new drug review and patient counseling rules adopted by the Georgia State Board of Pharmacy become effective.

In my opinion this limited duty best serves the patient, the doctor and the pharmacist. Although the pharmacist owes a duty to the patient beyond just accurately filling the prescribed medication, the pharmacist is not unduly interjected into the physician-patient relationship. On the other hand, the pharmacist is required to question a prescription which is erroneous or which is irregular on its face, thereby protecting the patient *and the physician* from physician errors which the patient could not detect but which would be readily apparent to a properly trained pharmacist.

Applying this limited duty to the facts of this case, a material question of fact remains for jury resolution concerning whether dispensing the drug Blephamide "PRN" constitutes such a patent or obvious error that the pharmacist should have contacted the prescribing physician before repeatedly dispensing the medication. The package insert for Blephamide contains the following warning: "Prolonged use may result in glaucoma, with damage to the optic nerve, defects in visual acuity and fields of visions, and in posterior subcapsular cataract formation. Prolonged use may suppress the host response and thus increase the hazard of secondary ocular infection. . . . If these products are used for 10 days or longer, intraocular pressure should be routinely monitored. . . ." I would therefore reverse the trial court's grant of appellee Eckerd's motion for partial summary judgment.

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED JUNE 3, 1993 —
RECONSIDERATION DENIED JULY 15, 1993 — 

*Walls & Corlew, Harold D. Corlew, Charles A. Cole, Jr.*, for Walker.

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, Adam L. Appel, Susan Z. Lembo*, for Karp.

*Sutherland, Asbill & Brennan, Elizabeth V. Tanis, Laura M. Shamp*, for Jack Eckerd Corporation.