A04A2203. CHAMBLIN et al. v. K-MART CORPORATION.
(612 SE2d 25)

MIKELL, Judge.

Jimmy and Jan Chamblin filed the underlying action against K-Mart Corporation ("K-Mart") after Jan Chamblin had an extreme allergic reaction to a prescription filled at a K-Mart pharmacy.[1] Jan Chamblin alleged that the pharmacist failed to warn her of the potential side effects of the drug in violation of the appropriate standard of care. The trial court granted summary judgment to K-Mart based on its conclusion that the "learned intermediary" doctrine barred any recovery against the pharmacy. The trial court denied the Chamblins' motion for partial summary judgment on the issue of K-Mart's negligence per se. The Chamblins appeal, arguing that the trial court erred in granting K-Mart's motion and in denying their motion. We affirm the judgment of the trial court.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that on December 20, 1995, Jan Chamblin was given two sample bottles of Daypro, which is an "NSAID" or nonsteroidal anti-inflammatory drug, by her orthopedic surgeon, Dr. Aguero, after she complained of knee and shoulder pain. The sample bottles each contained 14 caplets of Daypro. According to Chamblin, the doctor did not explain any potential side effects of the drug, and she did not inquire about any such effects. Chamblin took

---

[1] The Chamblins also named Jan's physician, Dr. Oscar Aguero, and the manufacturer of the drug at issue, G. D. Searle & Co., as defendants in the lawsuit. The Chamblins voluntarily dismissed their claims against Dr. Aguero without prejudice on November 10, 1999, then moved for voluntary dismissal of G. D. Searle with prejudice on July 26, 2001, stating that they had reached a settlement with the drug manufacturer.

one sample caplet of Daypro on December 20, and two caplets each day for the next twelve days.

According to Chamblin, on or about December 27, 1995, she began experiencing headaches, "dry and itchy" eyes, and flu-like symptoms. She had an appointment with Dr. Aguero on December 29, but she did not mention her symptoms. Dr. Aguero gave Chamblin a prescription for Daypro. Chamblin continued taking the samples of Daypro through January 1, 1996. The next day, she had the prescription filled at the K-Mart pharmacy. Chamblin deposed that she did not have any questions or concerns at the time she picked up her prescription and that she did not ask to speak with the pharmacist. Daniel Brock, the K-Mart pharmacist who filled the prescription, deposed that it was his usual practice to counsel all of his customers; however, he had no specific recollection of Chamblin. He further testified that a drug synopsis is attached to the bag of every prescription dispensed by the K-Mart pharmacy.

According to Chamblin, on January 3, 1996, she developed blisters in her mouth and experienced difficulty breathing. She went to the emergency room at South Georgia Medical Center and then to Dr. Leon Smith, who diagnosed her as having a reaction to the Daypro known as Stevens-Johnson syndrome, which is a rare extreme allergic reaction to medication. Chamblin was treated at Shands Hospital at the University of Florida.

Chamblin's own expert witness, orthopedic surgeon Dr. Lazaro Guerra,[2] admitted that "probably any drug could cause Stevens-Johnson syndrome." Dr. Guerra also testified that Daypro has less than a one in one million chance of causing Stevens-Johnson syndrome and that he does not warn his own patients about that potential reaction when he prescribes the drug. He further testified that there was no reason for Dr. Aguero to foresee the rare occurrence of Stevens-Johnson in Chamblin's case. Additionally, Dr. Guerra deposed that there was no way of determining whether the onset of Stevens-Johnson syndrome was caused by the sample caplets of Daypro provided by Dr. Aguero or by the prescription dispensed by K-Mart.

The Chamblins' sole theory of recovery against K-Mart is that it failed to warn Jan Chamblin of the potential side effects of Daypro, including Stevens-Johnson syndrome, in violation of the standard of care for pharmacists. There is no allegation that the K-Mart pharmacist improperly filled the prescription, provided Chamblin with incorrect instructions, or gave the drug in an incorrect strength or quantity.

---

[2] Dr. Guerra was not offered as an expert in the field of pharmacology.

1. In its grant of summary judgment to K-Mart on the issue of negligence, the trial court concluded that "the 'learned intermediary rule'. . . places the duty to counsel or warn patients about the possible adverse effects of prescribed medications upon the prescribing physician and not upon the pharmacist filling said prescription." The Chamblins contend that the court erred in reaching this conclusion. We affirm the judgment of the trial court on this ground.

To state a cause of action for negligence in Georgia, a plaintiff must show "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage . . . as a result of the alleged breach." *Bradley Center v. Wessner*, 250 Ga. 199, 200 (1) (296 SE2d 693) (1982). In this case, the Chamblins argue that the K-Mart pharmacy owed Jan Chamblin a duty to warn her of any potential adverse effects of Daypro based on the regulations of the Georgia State Board of Pharmacy (the "Board") requiring dispensing pharmacists to offer to counsel patients about their medication. See Ga. Comp. R. & Regs. r. 480-31-.01 (c) (1). They further argue that the K-Mart pharmacist breached this duty by failing to warn Chamblin of the risk of Stevens-Johnson syndrome.

Significantly, the rules promulgated by the Board do not establish a duty to warn about every possible side effect of a drug. Ga. Comp. R. & Regs. r. 480-31-.01 (c) (1) provides:

> Upon receipt of a Prescription Drug Order and following a review of the patient's record, the dispensing Pharmacist shall personally offer to discuss matters which will enhance or optimize drug therapy with each patient. . . . Such discussion . . . shall include appropriate elements of patient counseling, based on the professional judgment of the pharmacist. Such elements may include but are not limited to the following: . . . (v) common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered. . . .

While the rule requires that counseling be offered to a customer, the topics of discussion are determined entirely by the subjective judgment of the individual pharmacist, and the rule only refers to *common* side or adverse effects in its list of elements of discussion that *may* be included. We cannot conclude that this rule established a heightened duty on the part of the K-Mart pharmacist to advise Chamblin of every remote potential side effect of Daypro.

This Court adopted the "learned intermediary" rule in *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517 (434 SE2d 63) (1993), after an exhaustive discussion of the rule's application in numerous other jurisdictions. Id. at 522-523 (2). In that case, we announced the rule as follows:

> A pharmacist owes the customer the highest degree of prudence, thoughtfulness, and diligence. However, a pharmacist has no duty to warn the customer or notify the physician that the drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that the various drugs in their prescribed quantities could cause adverse reactions to the customer. It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient, to elicit from the patient what other drugs the patient is taking, to properly prescribe various combinations of drugs, to warn the patient of any dangers associated with taking the drug, to monitor the patient's dependence on the drug, and to tell the patient when and how to take the drug. Further, it is the duty of the patient to notify the physician of the other drugs the patient is taking. Finally, it is the duty of the drug manufacturer to notify the physician of any adverse effects or other precautions that must be taken in administering the drug. Placing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability.

(Citation and punctuation omitted.) Id. at 522 (2), citing *Jones v. Irvin*, 602 FSupp. 399, 402-403 (S.D. Ill. 1985). However, because the *Walker* decision involved events that took place before the Board imposed rules and regulations on pharmacists, we stated that "this case is not intended to serve as controlling precedent for cases involving pharmacists' duties arising after January 1, 1993." *Walker*, supra at 523 (2). See Ga. Comp. R. & Regs. r. 480-31-.01 (effective January 1, 1993).

The narrow issue of a pharmacist's duty to warn a customer of a drug's potential side effects has not been addressed by this Court or by our Supreme Court since the Board's rules were established. However, in *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga. App. 547 (487 SE2d 70) (1997), we affirmed the trial court's dismissal of the plaintiffs' claim that a drug manufacturer was negligent for failing to warn a patient of the dangers of discontinuing the use of a certain drug. Further, in *McCombs v. Synthes*, 277 Ga. 252 (587 SE2d 594)

(2003), our Supreme Court cited the learned intermediary rule in connection with its determination of the duty of a manufacturer of a medical device to warn a patient of potential dangers:

> Under the learned intermediary doctrine, the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer. The rationale for the doctrine is that the treating physician is in a better position to warn the patient than the manufacturer, in that the decision to employ prescription medication or medical devices involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular need and susceptibilities.

(Punctuation and footnotes omitted.) Id. at 253 (1). The Court's reasoning that the treating physician is in a better position to warn a patient of the dangers associated with a drug or medical device would seem to apply in the case of a pharmacist as well.

A case decided by the Court of Appeals of Texas is very similar to the case at bar, and its reasoning proves instructive. In *Morgan v. Wal-Mart Stores*, 30 SW3d 455 (Tex. App. 2000), the Court acknowledged the existence of administrative rules establishing a general duty on the part of pharmacists to offer to counsel patients about potential side effects of their medication and reasoned that

> [w]hile these administrative rules demonstrate that pharmacists in Texas are trusted professionals with varied and important responsibilities, they cannot be reasonably read to impose a legal duty to warn patients of the adverse effects of prescription drugs. The imposition of a generalized duty to warn would unnecessarily interfere with the relationship between physician and patient by compelling pharmacists seeking to escape liability to question the propriety of every prescription they fill. Furthermore, a patient faced with an overwhelming number of warnings from his or her pharmacist may decide not to take a medication prescribed by a physician, who has greater access to and knowledge of the patient's complete medical history and current condition than the pharmacist.

Id. at 467. A number of other jurisdictions have declined to impose on pharmacists a duty to warn of potential adverse side effects. See, e.g., *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P3d 922, 929 (II) (B) (Utah

2003) (learned intermediary rule extended to pharmacists); *Fakhouri v. Taylor*, 248 Ill. App.3d 328, 332-333 (618 NE2d 518) (1993) (court declined to impose greater liability on pharmacist than drug manufacturer); *Stebbins v. Concord Wrigley Drugs*, 164 Mich. App. 204, 218 (416 NW2d 381) (1987); *Eldridge v. Eli Lilly & Co.*, 138 Ill. App.3d 124, 127 (485 NE2d 551) (1985); *Pysz v. Henry's Drug Store*, 457 S2d 561, 562 (Fla. App. 1984).

Finally, the Chamblins have not cited any evidence in the record establishing that the employees of the K-Mart pharmacy did not make an offer of counseling.[3] Brock deposed that he was aware of the regulations regarding patient counseling and that he made a point of talking to customers about their prescriptions, but he did not specifically recall Jan Chamblin. Further, it is unlikely that Brock would have discussed the risk of Stevens-Johnson syndrome if he had counseled Chamblin, as the Chamblins' own expert witness, Dr. Guerra, testified that it was an extremely rare allergic reaction that could be caused by almost any drug.

Accordingly, because the trial court properly found that K-Mart did not have a duty to warn Chamblin of every potential side effect of Daypro, we affirm the grant of summary judgment to K-Mart.

2. Based on our holding in Division 1 that the rules and regulations promulgated by the Board did not establish a generalized duty on the part of pharmacists to warn of every potentially adverse reaction to a drug, we find that the trial court properly denied the Chamblins' motion for summary judgment on the issue of negligence per se. See *Kull v. Six Flags Over Ga.*, 264 Ga. App. 715, 716 (592 SE2d 143) (2003).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 3, 2005 —
RECONSIDERATION DENIED MARCH 17, 2005.

*Stephen L. Ivie, John M. Brown*, for appellants.
*Strawinski & Goldberg, James S. Strawinski, Nicole W. Stout*, for appellee.

---

[3] We note that the Chamblins' citation to Jan Chamblin's deposition testimony that she did not receive counseling about the drug referred to the samples Dr. Aguero gave her and not the prescription filled by the K-Mart pharmacist.