S93G1154. HARRELL et al. v. LUSK.
(439 SE2d 896)

HUNSTEIN, Justice.

Ms. Johnnie Lusk brought an action in February 1990 against Robert Harrell, who is a licensed pharmacist, and others, alleging that Harrell had negligently filled a prescription she had given him with the incorrect dosage (5 mg. instead of the prescribed 25 mg.). The parties agree that Lusk attached the affidavit of a medical doctor to her complaint and that thereafter the action was dismissed on the ground that the affidavit failed to satisfy the requirements of OCGA § 9-11-9.1.[1] Lusk then filed the instant action in August 1991, attaching the affidavit of a pharmacist. Harrell and the other defendants (hereinafter "Harrell") moved to dismiss on the ground that Lusk's action constituted a professional malpractice action to which OCGA § 9-11-9.1 was applicable and that Lusk was barred by OCGA § 9-11-9.1 (f) from renewing her malpractice action. The trial court denied the motion on the basis that pharmacy is not among those professions delineated in *Gillis v. Goodgame,* 262 Ga. 117 (414 SE2d 197) (1992) and thus OCGA § 9-11-9.1 was not applicable. On interlocutory appeal, the Court of Appeals affirmed. *Harrell v. Lusk,* 208 Ga. App. 358

---

[1] OCGA § 9-11-9.1 requires that an affidavit by an expert competent to testify must be attached to the plaintiff's complaint "[i]n any action for damages alleging *professional* malpractice." (Emphasis supplied.) Id. at (a).

(430 SE2d 653) (1993).

In *Gillis*, supra, this Court, in determining the professions that come within the ambit of OCGA § 9-11-9.1, looked not only to OCGA § 14-7-2 (2) (which defines "profession" by setting forth 16 specific professions), but also OCGA § 14-10-2 (2) (defining "professional service") and OCGA § 43-1-24 (providing that licensed professionals are subject to regulation by state examining boards). OCGA § 14-10-2 (2) provides that a professional service is that "which may be legally performed *only pursuant to a license from a state examining board* pursuant to Title 43." (Emphasis supplied.) OCGA § 43-1-24 speaks in terms of "[a]ny person *licensed by a state examining board*" (emphasis supplied) and cross-references Title 14, Chapters 7 and 10, as containing the Code sections setting forth the professions and professional services subject to regulation.

It is apparent from the interplay between OCGA § 14-10-2 (2) and OCGA § 43-1-24 that the *Gillis* Court sought to limit the application of the affidavit requirement in OCGA § 9-11-9.1 to those professions which can legally be performed only when a state examining board has determined that the applicant has successfully completed the schooling or training statutorily required to qualify him to practice that profession.[2] By applying OCGA § 9-11-9.1 only to those licensed professions where the state examining board's issuance of the license is conditioned upon an applicant's successful completion of schooling and/or training, we do nothing more than acknowledge that these certain professions require specialized knowledge and the mastery of certain skills. Because the basis of legal liability in a professional malpractice case is whether a defendant exercised a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by respective professionals under similar conditions and like surroundings, *Kneip v. Southern Engineering Co.*, 260 Ga. 409 (2) (395 SE2d 809) (1990), and because this matter involves highly specialized expert knowledge with respect to which lay persons can have no knowledge at all, see *Jordan, Jones & Goulding v. Wilson*, 197 Ga. App. 354 (1) (398 SE2d 385) (1990), only those individuals possessing like expertise, obtained through commensurate education or training, are competent to testify as to whether a professional defendant complied with or deviated from the applicable standard of professional conduct, an expertise requirement that applies to the

---

[2] Hence, a distinction must be drawn between those occupations included in Title 43 where licensure involves merely registration, e.g., firearm dealers, OCGA § 43-16-1 et seq.; operators of motor vehicle racetracks, OCGA § 43-25-1 et seq.; peddlers, OCGA § 43-32-1 et seq.; and used motor vehicle parts dealers, OCGA § 43-48-1 et seq., and those occupations where licensure is conditioned upon the state examining board's determination that the applicant successfully completed the schooling and/or training upon which licensure is statutorily preconditioned.

OCGA § 9-11-9.1 affidavit, see *Chandler v. Koenig*, 203 Ga. App. 684 (417 SE2d 715) (1992), to motions for summary judgment, see *Gen. Hosps. of Humana v. Bentley*, 184 Ga. App. 489 (361 SE2d 718) (1987), and to trial testimony. See *Sandford v. Howard*, 161 Ga. App. 495 (4) (288 SE2d 739) (1982). Accord *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978). Therefore, we hold that OCGA § 9-11-9.1 applies only to those licensed professions regulated by state examining boards where licensure is predicated upon the successful completion of the specialized schooling or training necessary to obtain the expertise to practice that profession.

Pharmacy has been legislatively defined as a profession. OCGA § 26-4-2. The practice of pharmacy is regulated by the State Board of Pharmacy, OCGA § 26-4-37, and an applicant is entitled to receive a license to practice pharmacy only upon compliance with the requirements in OCGA § 26-4-72, including graduating from a recognized school or college of pharmacy and successfully passing an examination administered by the State Board of Pharmacy. An extensive review of the Official Code of Georgia Annotated reveals that pharmacy, with its education-qualified licensing and state examining board regulation, is the only profession declared to be such by the legislature that is *not* included in Title 43.[3] As the legislature itself recognized when it enacted the Fair Business Practices Act, OCGA § 10-1-391 et seq., and provided, among the powers of the administrator, the authority to revoke professional licenses, our Code defines a "person holding a professional license" as including not only Title 43 but also Chapter 4 of Title 26, i.e., pharmacists. OCGA § 10-1-395 (f).

We therefore find it necessary to augment the list of professions set forth in *Gillis*, supra, with those persons holding a professional license pursuant to Chapter 4 of Title 26.[4] Because a suit that calls into question the conduct of a professional pharmacist in his area of expertise is a suit brought against a defendant who provides a service

---

[3] Although there are other licensed *businesses* not included in Title 43, e.g., water well contractors, OCGA § 12-5-127 (who are required to act under the direction of a professional geologist or professional engineer, OCGA § 12-5-125, both of which are licensed professions under OCGA § 14-7-2 (2)) and professional foresters, OCGA § 12-6-52 (the refusal to grant or revocation of whose licenses are subject to Title 43, OCGA § 12-6-57), such businesses are not denominated professions in the same manner in which the legislature has denominated pharmacy a profession. See OCGA § 26-4-2 (16) (A).

Professional negligence suits against teachers are not subject to OCGA § 9-11-9.1 because, although the legislature has recognized that teaching is a profession, OCGA § 20-2-791, teachers are certified, not licensed, OCGA § 20-2-200, and, unlike certified public accountants, are not expressly listed among the professions in OCGA § 14-7-2 (2). See also, e.g., court reporters, OCGA §§ 15-14-22 (3); 15-14-29; fire fighters, OCGA §§ 25-7-7; 25-4-8.

[4] We find no merit in Lusk's argument that Harrell occupies the same status as the unlicensed radiological physicist in *Gillis* based on the legislature's enactment, subsequent to our holding in *Gillis*, of the Nuclear Pharmacy Law. OCGA § 26-4-130 et seq. (Code 1981, enacted by Ga. L. 1983, p. 790, § 2.)

which can be legally performed only pursuant to a license from a state examining board issued upon successful completion of specialized schooling and/or training, we hold that the requirements of OCGA § 9-11-9.1 must be met. Accord *Sparks v. Kroger Co.*, 200 Ga. App. 135 (407 SE2d 105) (1991). See also *Faser v. Sears, Roebuck & Co.* 674 F2d 856 (11th Cir. 1982).

However, although ordinarily this Court would rule that Lusk's second complaint, filed with the affidavit of a licensed pharmacist should be dismissed with prejudice pursuant to OCGA § 9-11-9.1 (f) that result would be unfair in this case. As in *Lutz v. Foran*, 262 Ga. 819 (4) (427 SE2d 248) (1993), this is an instance in which it was unclear at the time Lusk filed her initial suit in 1990 whether OCGA § 9-11-9.1 applied to claims of malpractice against pharmacists Thus, it would be manifestly unfair to apply OCGA § 9-11-9.1 (f) to the case at bar. Accord *Lutz*, supra. Therefore, the Court of Appeals did not err by affirming the trial court's denial of Harrell's motion to dismiss Lusk's suit.

*Judgment affirmed. All the Justices concur, except Carley, J. who concurs specially.*

CARLEY, Justice, concurring specially.

Appellant-defendant is a pharmacist who allegedly committed a negligent act or omission in filling appellee-plaintiff's prescription Appellee's original suit against appellant was dismissed for appellee's failure to comply with OCGA § 9-11-9.1 (a). After the statute of limitation had run, appellee brought the instant renewal action against appellant. Appellant moved to dismiss pursuant to OCGA § 9-11-9.1 (f). Relying upon *Gillis v. Goodgame*, 262 Ga. 117 (414 SE2d 197) (1992), the trial court denied appellant's motion, holding that appellee's suit against appellant was not an "action for damages alleging professional malpractice" within the meaning of OCGA § 9-11-9.1 (a). The Court of Appeals granted an interlocutory appeal and affirmed, concluding that, under *Gillis*, it was "constrained to hold that pharmacy is not a profession to which the affidavit requirements of OCGA § 9-11-9.1 [(a)] apply." *Harrell v. Lusk*, 208 Ga. App. 358, 360 (430 SE2d 653) (1993). This Court granted a writ of certiorari and the majority concludes that appellee's suit is within the scope of OCGA § 9-11-9.1 (a). The majority bases its holding upon the existence of certain statutory provisions in Chapter 4 of Title 26 relating to the practice of pharmacy. I concur in the majority's holding that appellee's suit is within the scope of OCGA § 9-11-9.1 (a). I do not, however, agree with the majority's rationale for that holding.

At the outset, it is important to recognize that the law of this state mandates that the plaintiff produce expert testimony at two different stages of a "professional malpractice" action. The common law

has long imposed an evidentiary requirement for the production of expert testimony during the post-pleading stage, whereby the plaintiff will ordinarily be compelled to "establish the standard of care applicable to [the] defendant by the introduction of expert opinion evidence. [Cits.]" *Covil v. Robert &c. Assoc.*, 112 Ga. App. 163, 167 (1) (144 SE2d 450) (1965). More recently, the General Assembly has imposed an additional requirement for the submission of expert testimony at the initial pleading stage, whereby the plaintiff must file, along with the complaint, an expert's affidavit setting "forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1 (a). In a series of cases, the appellate courts of this state have attempted to define the scope of the applicability of the statutory pleading requirement of OCGA § 9-11-9.1 (a). See *Housing Auth. of Savannah v. Greene*, 259 Ga. 435 (383 SE2d 867) (1989); *Kneip v. Southern Engineering Co.*, 260 Ga. 409 (395 SE2d 809) (1990); *Gillis v. Goodgame*, supra. In *Gillis*, supra at 118, it was held that

> the legislature intended for the term "professional" as used in OCGA § 9-11-9.1 [(a)] to be defined by OCGA §§ 14-7-2 (2); 14-10-2 (2); and 43-1-24. We hold, therefore, that the affidavit requirements of [OCGA] § 9-11-9.1 [(a)] apply *only* to those professions recognized under Georgia law in OCGA §§ 14-7-2 (2); 14-10-2 (2); and 43-1-24. [Cit.]

(Emphasis supplied.)

It is clear that, as interpreted in *Gillis*, the scope of the applicability of the statutory *pleading* requirement of OCGA § 9-11-9.1 (a) would be much narrower than that of the common law *evidentiary* requirement. The applicability of the common law evidentiary requirement is certainly *not* limited to malpractice actions against only those defendants who are engaged in the "professions" that are enumerated in OCGA §§ 14-7-2 (2); 14-10-2 (2) and 43-1-24. "The word 'profession' literally may be applied to any calling or vocation requiring special knowledge of a branch of science or learning . . . ." *Ga. State Bd. of Examiners v. Friedmans' Jewelers*, 183 Ga. 669, 673 (189 SE 238) (1936).

> Professional men in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. Most of the decided cases have dealt with physicians and surgeons, but the same is undoubtedly true of dentists, pharmacists, psychiatrists, attorneys, architects and engineers, accountants,

abstracters of title, and many other professions and even skilled trades.

Prosser, The Law of Torts (4th ed. 1971), pp. 161-162, § 32.

"The law imposes upon persons performing architectural, engineering, and *other professional and skilled services* the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions." [Cit.]

(Emphasis supplied.) *Bodin v. Gill*, 216 Ga. 467, 472 (1) (117 SE2d 325) (1960).

Thus, the scope of the applicability of the common law evidentiary requirement extends to any malpractice action against a defendant who is engaged in any "profession" requiring "highly specialized expert knowledge with respect to which a layman can have no knowledge at all . . . ." *Pilgrim v. Landham*, 63 Ga. App. 451, 454 (11 SE2d 420) (1940). In such cases,

"[t]he court and the jury must have a *standard* measure which they are to use in measuring the acts of the [professional] in determining whether he exercised a reasonable degree of care and skill. They are not permitted to set up and use any arbitrary or artificial standard of measurement that a jury may wish to apply." [Cit.]

(Emphasis in original.) *Howell v. Jackson*, 65 Ga. App. 422, 423 (1) (16 SE2d 45) (1941).

The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent [professional] would have done under similar circumstances, and the jury may not be permitted to speculate about what the "professional custom" may be. Expert evidence as to the "professional custom" is required in malpractice actions against . . . professionals. [Cits.]

*Hughes v. Malone*, 146 Ga. App. 341, 345 (247 SE2d 107) (1978).

There is no dispute that pharmacy is a "profession" calling for highly specialized expert knowledge. See Prosser, The Law of Torts (4th ed. 1971), p. 161, § 32, fn. 34. Thus, insofar as the applicability of the common law evidentiary requirement is concerned, a suit by

appellee against appellant would certainly be an "action for damages alleging professional malpractice," wherein appellee would ordinarily be required to produce expert testimony to establish the standard of care from which she alleges that appellant deviated. However, pharmacy is not a "profession" which is enumerated in OCGA §§ 14-7-2 (2); 14-10-2 (2) or 43-1-24. Thus, under *Gillis*, a suit by appellee against appellant would not be an action against a "professional" insofar as the applicability of the statutory pleading requirement of OCGA § 9-11-9.1 (a) is concerned. The anomalous result is that appellee would not be required to submit an expert's affidavit along with her complaint, even though she would ordinarily be required to produce expert testimony on summary judgment or at trial.

Contrary to the holding in *Gillis*, I do not believe that the scope of the applicability of OCGA § 9-11-9.1 (a) is dependent upon a *statutory* definition of the term "professional." In specifying its scope, OCGA § 9-11-9.1 (a) does not merely employ the term "professional." Instead, it employs the phrase "any action for damages alleging professional malpractice." Accordingly, the issue for resolution is *not* whether "the General Assembly enacted OCGA § 9-11-9.1 [(a)] ' "with full knowledge of the existing condition of the law [regarding a statutory definition of the term 'professional'] and with reference to it. . . ." ' [Cits.]" *Gillis v. Goodgame*, supra at 118. Instead, the issue for resolution is the legislative intent in establishing the submission of an expert's affidavit as an initial pleading requirement in "any action for damages alleging professional malpractice."

There is certainly a presumption that the General Assembly enacted OCGA § 9-11-9.1 (a) " 'with full knowledge of the existing condition of the law and with reference to it . . . .' " *Housing Auth. of Savannah v. Greene*, supra at 438. However, OCGA § 9-11-9.1 (a) relates to the specific topic of practice and procedure in "professional malpractice" actions and, although the three statutes cited in *Gillis* may define the term "professional" for certain purposes, none of those statutes relates to the specific topic of "professional malpractice" actions. On the other hand, the common law evidentiary requirement specifically applicable in "professional malpractice" actions long antedates enactment of OCGA § 9-11-9.1 (a). In my opinion, it is "with full knowledge" of that specific antecedent common law legal principle, and not "with reference" to the non-germane provisions of OCGA §§ 14-7-2 (2); 14-10-2 (2) or 43-1-24, that the General Assembly established the statutory pleading requirement of OCGA § 9-11-9.1 (a). Thus, the legislative intent of OCGA § 9-11-9.1 (a), as I perceive it, was not to limit the applicability of the initial pleading requirement to only malpractice actions brought against those defendants who are engaged in the "professions" enumerated in OCGA §§ 14-7-2 (2); 14-10-2 (2) and 43-1-24. Rather, the legislative

intent of OCGA § 9-11-9.1 (a) was to create an initial pleading requirement, the applicability of which would be as broad as the antecedent common law evidentiary requirement. The common law having already previously defined "an action for damages alleging professional malpractice" for purposes of imposing an evidentiary requirement that expert testimony be produced at the summary judgment or trial stage, the General Assembly understandably adopted that existing definition for purposes of imposing the statutory pleading requirement that an expert's affidavit be submitted along with the complaint. The rationale for making the scope of cases subject to the statutory pleading requirement as broad as the ambit of cases wherein the common law evidentiary requirement is applicable is apparent. If the plaintiff who would ordinarily be required to produce expert testimony on summary judgment or at trial cannot even produce an expert's affidavit at the initial pleading stage, the defendant should not be put to any additional time and expense in defending himself against the claims of his negligent professional conduct. I simply cannot agree that the General Assembly intended that those defendants who engage in "professions" other than those enumerated in OCGA §§ 14-7-2 (2); 14-10-2 (2) or 43-1-24 are to be denied the benefit of OCGA § 9-11-9.1 and, despite the lack of any expert's affidavit to support the plaintiff's complaint, are nevertheless to be put to additional time and expense in defending themselves against the otherwise unsupported claims of their negligent professional conduct.

The majority perpetuates what I perceive to be the error in *Gillis*, insofar as it accepts the premise of *Gillis* that the scope of the applicability of OCGA § 9-11-9.1 (a) is somehow dependent upon a *statutory* definition of the term "professional." Having discovered another statute which was not enumerated in *Gillis*, but which does define a "pharmacist" as a "professional," the majority now "find[s] it necessary to augment the list of professions set forth in *Gillis*, supra, with those persons holding a professional license pursuant to Chapter 4 of Title 26." Majority at p. 897. I cannot join in the majority's rationale of "augmenting" *Gillis*' list of various statutes which define the term "professional" for various and sundry reasons. By its express terms, OCGA § 9-11-9.1 (a) applies to "any action for damages alleging professional malpractice. . . ." That phrase already has a common law definition which needed no judicial reinterpretation in *Gillis* and which needs no further judicial "augmentation" in the instant case or in any future cases.

> Where the failure to do a thing, or the negligent doing of it, is proved by reliance upon a general standard of care or by rules of procedure used by others competently performing the same service, it is a "professional" act or practice. [Cit.]

Wherever it is "necessary to establish the parameters of acceptable professional conduct" ([cit.]) in order to prove negligence or breach for failure to perform in a workmanlike manner, the case must be deemed a *professional* malpractice case.

(Emphasis in original.) *Razete v. Preferred Research*, 197 Ga. App. 69, 70 (397 SE2d 489) (1990). Thus, rather than sanctioning a continuing judicial effort to "augment" *Gillis'* list of statutory definitions of the term "professional," I would simply hold that, as is equally true with regard to the antecedent common law evidentiary requirement,

[t]he determinative factor as to whether a suit in negligence is or is not a malpractice action within the ambit of OCGA § 9-11-9.1 is the existence or absence of allegations that the defendant-professional has rendered negligent professional services. In the case wherein such allegations are made, resolution of the issue of the defendant's compliance with or deviation from the applicable standard of professional conduct calls for "highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence." [Cit.] Accordingly, any plaintiff . . . who brings suit against a professional and seeks to recover for the alleged negligent performance of professional services *is* required by OCGA § 9-11-9.1 to file an expert's affidavit setting forth at least one specific negligent act or omission and the factual basis for such a claim.

(Emphasis in original.) *Jordan, Jones & Goulding v. Wilson*, 197 Ga. App. 354, 355 (1) (398 SE2d 385) (1990).

The trial court and the Court of Appeals were bound by this Court's holding in *Gillis* that OCGA § 9-11-9.1 (a) applied *only* to suits against those professionals enumerated in OCGA §§ 14-7-2 (2); 14-10-2 (2) and 43-1-24. It is only this Court which is authorized to reexamine *Gillis* and to rectify any error in its holding. The majority would recognize that *Gillis* was erroneous, but only to the extent that it overlooked certain provisions found in Chapter 4 of Title 26 relating to the practice of pharmacy. I would go further and overrule *Gillis* on the basis that its very premise was erroneous. Without regard to any statutory definition of the term "professional" which may have been in existence at the time that suit was originally filed against appellant, appellee would have been required, under this state's common law, to produce at the post-pleading stage an expert's testimony to establish the standard of care from which she alleged that appel-

lant deviated. Accordingly, I would hold that appellee's original suit must be deemed to have been an "action for damages alleging professional malpractice" which, under OCGA § 9-11-9.1 (a), she was required at the initial pleading stage to have supported with an expert's affidavit. Since she did not, OCGA § 9-11-9.1 (f) would ordinarily bar her instant renewal action. However, I agree with the majority that a strict adherence to OCGA § 9-11-9.1 (f) would, under the circumstances, be manifestly unfair to appellee. *Lutz v. Foran*, 262 Ga. 819, 824 (4) (427 SE2d 248) (1993). I concur, therefore, in the majority's affirmance of the denial of appellant's motion to dismiss.

DECIDED FEBRUARY 7, 1994 —
RECONSIDERATION DENIED MARCH 11, 1994.

*Irwin, Bladen, Baker & Russell, Jennie E. Rogers, Leslie H. Claxton,* for appellants.
*Lanser, Levinson & Paul, Adrian F. Lanser III, Michael A. Corbin,* for appellee.