A97A0196. PRESTO et al. v. SANDOZ PHARMACEUTICALS CORPORATION et al.

(487 SE2d 70)

BLACKBURN, Judge.

In this prescription-drug products liability case, plaintiffs appeal the trial court's grant of defendant Sandoz's motion to dismiss plaintiffs' complaint, which alleges that the defendants are tortiously liable for the suicide of Greg Presto, for failing to warn him of the dangers of discontinuing the use of the drug Clozaril. The trial court held that the complaint failed to state a claim as to Sandoz, the manufacturer, as its duty to warn was limited to providing such notice only to the prescribing physician, Dr. Warren. Plaintiffs also appeal the trial court's grant of summary judgment on plaintiffs' tort and warranty claims to defendant Caremark, whose limited duty it was to dispense the drug, draw the patient's blood, review his lab results, and provide them to Dr. Warren. Neither Dr. Warren nor Peachford Behavior Health Systems, d/b/a Charter Peachford Hospital, is a party to this appeal.

Greg Presto, the adult son of plaintiffs Charles and Mary Presto, committed suicide in September 1991. The Prestos claim that Greg committed suicide because he suddenly stopped taking Clozaril, a prescription anti-psychotic drug manufactured by defendant Sandoz Pharmaceuticals Corporation, distributed by defendant Caremark, Inc., and prescribed by defendant Dr. Warren.

The Prestos allege the defendants should have warned Greg of the dangers he faced if he discontinued use of the drug. They appeal from the trial court's rulings which found: (1) that defendant Sandoz had no duty to warn Greg of the dangers of discontinuing the use of Clozaril; (2) that defendant Caremark was not subject to liability for professional negligence because the Prestos did not attach the required expert affidavit to their complaint; and (3) that Caremark

was not liable under a warranty theory for an "inadequately labeled" drug.

Greg had previously been treated for mental illness with Clozaril, which had been prescribed to him by defendant Dr. Warren. Because Clozaril can damage a patient's immune system, defendant Caremark was hired to perform certain tests on Greg, monitor the results of those tests, and dispense the medication to him.

The Clozaril helped Greg's condition, but it had undesirable side effects. In August 1991, Greg and his mother requested he be taken off the medication and be prescribed a different drug. Dr. Warren agreed, the plaintiffs allege. According to the Prestos' complaint, neither Greg nor his parents were told of a warning included in the Clozaril packaging. This warning recommended that patients be removed from the drug by gradually reducing the dosage over a one- or two-week period and stated, "[s]hould a patient's medical condition require abrupt discontinuation . . . , the patient should be carefully observed for the recurrence of psychotic symptoms."

1. Sandoz, the manufacturer, moved to dismiss the complaint for failure to state a claim, on the ground that it was required to give any warnings *only* to Greg Presto's physician. The record shows the trial court granted this motion after considering matters outside the pleadings, specifically documents provided by the plaintiffs and the deposition of Mary Presto. Thus, the motion is construed as one for summary judgment, upon which the parties were given a hearing. See *Christensen v. State of Ga.*, 219 Ga. App. 10, 12 (4) (464 SE2d 14) (1995).

The Prestos acknowledge the settled "learned intermediary rule" of Georgia law that the manufacturer of a *prescription* drug is not normally required to directly warn the patient of dangers in its use. "Ordinarily, in the case of prescription drugs, a warning as to possible danger in its use to the prescribing physician is sufficient." (Citations and punctuation omitted.) *Singleton v. Airco, Inc.*, 169 Ga. App. 662, 664 (314 SE2d 680) (1984); see also *Hawkins v. Richardson-Merrell, Inc.*, 147 Ga. App. 481, 482-483 (1) (249 SE2d 286) (1978); *Parke, Davis & Co. v. Mayes*, 124 Ga. App. 224 (183 SE2d 410) (1971).

The plaintiffs mistakenly claim that *Carter v. E. I. DuPont de Nemours & Co.*, 217 Ga. App. 139 (456 SE2d 661) (1995) weakens this rule. *Carter* involved plaintiffs who purchased clothing available to the general public without warnings regarding the fabric's flammability. *Carter* is not applicable to this case, which involves a *prescription* drug, available *only* through a licensed, skilled physician. As we stated in *Hawkins,* supra at 483 (1), "[t]his special standard for prescription drugs is an understandable exception to the . . . general rule that one who markets goods must warn foreseeable ulti-

mate users of dangers inherent in his products. Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers." (Citation and punctuation omitted.)

The Prestos make no claim that Sandoz failed to warn Greg's physician, Dr. Warren, of this potentially adverse effect of Clozaril. In fact, they point to such a warning included with the medication's packaging, and the record shows Dr. Warren signed a document stating he was familiar with all Clozaril package labeling. They make no argument that the warning given Dr. Warren was inadequate. Thus, the "learned intermediary" rule of *Hawkins* applies here, and Sandoz had no duty to directly warn Greg or the Prestos of the potential hazards of the use of Clozaril.

The Prestos, however, claim Sandoz should have warned Greg directly because it did give *some* direct information in the form of a pamphlet entitled "Understanding Clozaril (clozapine) Therapy: A Guide for Patients and Their Families." Plaintiffs cite the principle that "[w]here one undertakes an act which he has no duty to perform and another reasonably relies on that undertaking, the act must generally be performed with ordinary or reasonable care." *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991); see also *Mixon v. Dobbs Houses*, 149 Ga. App. 481, 484 (254 SE2d 864) (1979). Because Sandoz voluntarily undertook to provide some information directly to patients, the Prestos argue, it should also have warned patients of the dangers of discontinuing use of the medication.

This argument fails because the Prestos could not, as a matter of law, have "reasonably relied" on this pamphlet for such a warning. See *Stelts,* supra. The pamphlet does not constitute an effort to inform patients of all the dangers of Clozaril and does not purport to do so. The booklet states that it "provides answers to many common questions about CLOZARIL" but cautions the reader: "If there are any other questions about CLOZARIL therapy, be sure to ask the doctor, nurse, or pharmacist." As the pamphlet covers only general issues concerning the drug, and as the Prestos relied on Dr. Warren to prescribe and supervise Greg's use of the drug, this theory of liability is without merit.

2. The trial court also granted summary judgment to Caremark on the Prestos' claims. The complaint alleged that Caremark "possessed actual or constructive knowledge of the dangers inherent in using and abruptly terminating the use of Clozaril" but did not inform Greg Presto of those dangers. A Caremark employee testified that the company's only role in Greg Presto's treatment was to draw his blood each week, review his lab results and provide them to Dr.

Warren, and dispense the drug. This employee denied that Caremark had any involvement in determining whether Presto should take Clozaril or the dosage which was prescribed. This evidence is undisputed.

Although the Prestos attached to their complaint an expert affidavit alleging the negligence of Dr. Warren, as required by OCGA § 9-11-9.1, that affidavit makes no reference to any negligent act or omission attributable to Caremark.

The Prestos also argue that Caremark contractually assumed the obligation of informing their son of the dangers associated with the drug. They cite regulations of the Georgia State Board of Pharmacy requiring dispensing pharmacists to counsel patients concerning their medication "based on the professional judgment of the pharmacist." See Rules & Regs. of the State of Ga., § 480-31-.01 (c) (1) (effective January 1, 1993). However, the cited regulations have no application to this claim, which arose over a year before the regulations became effective.

The Prestos' claims, however labeled, are allegations of professional malpractice on the part of pharmacists or nurses at Caremark. "A suit is a [professional] malpractice action where . . . it calls into question the conduct of a professional in his area of expertise." *Knight v. Sturm*, 212 Ga. App. 391, 392 (2) (442 SE2d 255) (1994). Whether the action sounds in contract or tort, it still requires the expert affidavit. See *Centrust Mtg. Corp. v. Smith & Jenkins, P.C.*, 220 Ga. App. 394, 396 (1) (469 SE2d 466) (1996) (complaint against lawyer for breach of contractual duties). The failure to attach to the complaint the expert affidavit required by OCGA § 9-11-9.1 required the dismissal of these claims. See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (1) (463 SE2d 5) (1995) (finding dismissal for failure to attach expert affidavit to complaint was adjudication on the merits); *Harrell v. Lusk*, 263 Ga. 895, 897-898 (439 SE2d 896) (1994) (expert affidavit required in actions against pharmacists).

Even if the expert affidavit requirement was not a factor, the case of *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517 (434 SE2d 63) (1993) dictates that the pharmacist had no duty in August 1991 to give the requested warnings regarding side effects associated with the discontinuation of Clozaril. That case is binding precedent for claims arising before January 1, 1993, and both the majority opinion and the dissent in *Walker* found the pharmacist had no independent duty to give such a warning. "The pharmacist does not . . . have a duty . . . to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer's package insert." (Citation and punctuation omitted.) Id. at 525 (Pope, C. J., dissenting).

The Prestos also contend that summary judgment on their claim

against Caremark was improper because they asserted warranty claims against Caremark to which the expert affidavit requirement does not apply. A similar claim was rejected in *Sparks v. Kroger Co.*, 200 Ga. App. 135, 136 (2) (407 SE2d 105) (1991), in which the Court held that a pharmacist may not be held liable in the absence of "negligence amounting to professional malpractice."

The Prestos' warranty claims are based on the Uniform Commercial Code's warranties of merchantability (OCGA § 11-2-314) and fitness for a particular purpose (OCGA § 11-2-315). Caremark is entitled to summary judgment on the warranty claim because it neither manufactured nor prescribed the subject drug. Neither would Sandoz be liable under any warranty claim because of the "learned intermediary" doctrine, absent some showing that the product itself was somehow defective and not of its usual or expected quality. The record contains no evidence of defect.

As to warnings, because the product's labeling provided competent warnings to the physician, it was "adequately . . . labeled as the agreement may require" and was, therefore, "merchantable" pursuant to OCGA § 11-2-314 (2) (e). Furthermore, because the patient is legally deemed to rely on the physician and not the package labeling for this warning, the Prestos cannot show they were "relying on the seller's skill or judgment to select or furnish suitable goods," as is required to prove an implied warranty of fitness for a particular purpose. OCGA § 11-2-315.

Finally, damages may be recovered for breach of warranty only if the plaintiff shows his injury proximately resulted from the breach of the warranty. OCGA § 11-2-715 (2) (b). Because the Prestos are legally deemed to have relied on Dr. Warren's advice, and not on the package labeling, they cannot show any breach of warranty caused by inadequate package labeling proximately caused the injury claimed.

We also acknowledge persuasive authority from other jurisdictions holding that such implied warranties do not apply to the dispensing of medication by a pharmacist. See, e.g., *Makripodis v. Merrell-Dow Pharmaceuticals*, 523 A2d 374, 376 (Pa. Super. 1987) (druggist does not warrant that prescription drugs are fit for "ordinary uses," as use of drug is a decision made by the physician); *Bichler v. Willing*, 397 NYS2d 57, 58-59 (N.Y. App. 1977) (warranties are not implied, as patient places confidence in doctor's skill, not pharmacist's); *McLeod v. W. S. Merrell Co.*, 174 S2d 736, 738-739 (Fla. 1965).

Therefore, we affirm the trial court's rulings in this matter.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED MAY 13, 1997 —
RECONSIDERATION DENIED MAY 28, 1997 — Before Judge Hancock.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, Dan B. Wingate*, for appellants.

*Hawkins & Parnell, Lawrence J. Myers, Charles R. Beans, Love & Willingham, Robert P. Monyak, Alston & Bird, Lawrie E. Demorest, Troutman Sanders, Amy S. Lettes*, for appellees.