## A01A0006. McCOMBS v. SYNTHES (U.S.A.) et al.
### (553 SE2d 17)

ANDREWS, Presiding Judge.

This is the second appearance of this product liability case before us.[1] Plaintiff Linda B. McCombs appeals from the trial court's grant of partial summary judgment to defendant Synthes Spine Company, L.P. (Synthes Spine) on its duty to warn McCombs under the learned intermediary doctrine (duty to warn claim). McCombs also appeals from the trial court's order finding a proper case and granting the renewed motion to open default, pursuant to OCGA § 9-11-55 (b), filed by defendants Synthes, Inc., Synthes North America, Inc., and Synthes Ltd., U.S.A. (defaulting Synthes defendants).

When this case first appeared before this Court in *McCombs I*,[2] we affirmed that part of the trial court's order granting defendants Southern Regional Medical Center, Inc.'s (Southern Regional Medical Center) and its parent corporation, Georgia MedCorp, Inc.'s (Georgia MedCorp), motion to dismiss McCombs' breach of warranty claims and reversed that part of the order denying McCombs' motion for default judgment against the defaulting defendants and remanded the case "for consideration of any pending motion to open default of [the defaulting defendants]." Id. at 681-682 (2).

The evidence construed in the light most favorable to McCombs shows that Dr. Achecar[3] operated on McCombs on July 26, 1994, as a result of a cervical disk herniation. Dr. Achecar installed a plate device, manufactured by Synthes (U.S.A.) and distributed by Synthes Spine to Southern Regional Medical Center, in McCombs' back in order to facilitate fusion of three vertebrae. That such a device is not available except upon prescription, surgical insertion, and under the supervision of the treating physician is undisputed in this product

---

[1] See *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676 (504 SE2d 747) (1998) (*McCombs I*).

[2] The underlying action arises out of McCombs' back surgery performed at Southern Regional Medical Center.

The surgical procedure involved, inter alia, the installation of a plate device to stabilize her spine. The surgeon installed a plate system manufactured by Synthes (U.S.A.). After experiencing problems with the plate, which she contends was fractured, Linda McCombs brought a [three-count] product liability suit against [all Synthes defendants], alleging strict liability and negligent design, manufacture and testing of the plate system. She also sued all Synthes defendants, Southern Regional Medical Center, Inc., and Georgia MedCorp, Inc., under the Georgia Uniform Commercial Code (OCGA §§ 11-2-314 and 11-2-315) and the Magnuson-Moss Act (15 USC § 2301 et seq.) asserting that these seven defendants had breached implied warranties of merchantability and fitness of the product for a particular purpose.

Id.

The strict liability claim remains pending below.

[3] Dr. Achecar is not a party to this litigation.

544

liability action.

McCombs was a smoker, and Dr. Achecar explained to her that smoking could be detrimental to the fusing of her vertebrae because smoking slows healing. Although McCombs used the Nicoderm patch, she was not able to quit smoking.

After surgery, McCombs was monitored by Dr. Achecar, and, during office visits on August 22 and September 6, 1994, the bone grafts and plate were in position and fusion was beginning. On November 21, 1994, nearly four months after the surgery, x-rays determined that the plate had fractured.

Dr. Achecar acknowledged that fracture of a fixation device is a risk of such surgery. The package insert included with the Synthes plate contained the following warning to the operating surgeon:

> *These devices can break when subjected to the increased loading associated with delayed union or nonunion.* Internal fixation appliances are load sharing devices which hold a fracture in alignment until healing occurs. If healing is delayed, or does not occur, the implant could eventually break due to metal fatigue. Loads produced by weight bearing and activity levels will dictate the longevity of the implant. The patient should understand that stress on an implant can involve more than weight bearing. In the absence of solid bony union, the weight of the limb alone, muscular forces associated with moving a limb, or repeated stresses of apparent relatively small magnitude, can result in failure of the implant. Notches or scratches put in the implant during the course of surgery may also contribute to breakage.

(Emphasis in original.)

Also, Dr. Pettine, upon whose deposition McCombs relied in opposing summary judgment, acknowledged that manufacturers of fixation devices warn that there is risk of plate breakage if the patient does not achieve fusion and that smoking can interfere with fusion.

In two enumerations of error, McCombs contends that the state court erred in granting Synthes Spine partial summary judgment as to her duty to warn claim because: (1) the grant of partial summary judgment was issued sua sponte denying her a full and fair opportunity to respond, Synthes Spine having neither briefed the issue nor argued it at the hearing on motion for summary judgment; and (2) there exists a jury question as to the adequacy of the warning given McCombs' doctor by the Synthes defendants. In three additional enumerations of error, McCombs contends that the state court erred

in granting the defaulting Synthes defendants' renewed motion to open default for violation of the law of the case rule in that no motion to open default was "pending" in the trial court after this Court's decision in *McCombs I*, which, among other things, remanded the case for consideration of any pending motion to open default of the defaulting Synthes defendants. In the alternative, McCombs contends that the state court abused its discretion in granting the motion to open default because the verified answer of the defaulting defendants failed to contain factual assertions under oath sufficient to show a meritorious defense under OCGA § 9-11-55 (b), and, in any event, the defaulting Synthes defendants' mistaken belief claim as to the validity of their answer was insufficient as a matter of law to authorize opening default on the grounds of "excusable neglect" or "proper case." Because these claims of error are without merit, as set out below, we affirm.

1. (a) The state court did not err in granting Synthes Spine's partial summary judgment as to McCombs' duty to warn claim for its failure to afford her an opportunity to controvert the claims against her. Citing *Aycock v. Calk*, 222 Ga. App. 763-764 (476 SE2d 274) (1996), McCombs correctly argues that a trial court errs in sua sponte granting summary judgment in circumstances where the nonmoving party has not been afforded a full and final opportunity to respond to the claims against that party. She also correctly cites *Dixon v. MARTA*, 242 Ga. App. 262, 266 (3) (529 SE2d 398) (2000), for the proposition that the nonmoving party is denied such an opportunity in circumstances where the record shows that neither party briefed or presented oral argument on the claim struck. Here, however, the record reflects that Synthes Spine briefed the duty to warn claim in its brief in response to plaintiff's motion for entry of default as to the defaulting Synthes defendants. The issue was not argued at the hearing on motion for summary judgment, but, in view of the foregoing, this is of no legal significance.

(b) It is well settled that the "learned intermediary" rule of *Hawkins v. Richardson-Merrell, Inc.*, 147 Ga. App. 481 (249 SE2d 286) (1978), is applicable to medical devices implanted in patients under the supervision of a physician. The rationale regarding medical devices is the same as that applicable to drugs prescribed by a physician, i.e., that the duty to warn the patient should rest, not with the manufacturer, designer, or distributor, but solely with the treating physician, in that "the decision to employ prescription medication involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular needs and susceptibilities. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, [521 (2) (434 SE2d 63) (1993) (whole court)]." *Lance v. American Edwards Laboratories*, 215 Ga. App. 713, 716 (452 SE2d 185) (1994) (physical precedent).

As reiterated in *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga. App. 547, 548-549 (1) (487 SE2d 70) (1997), "[a]s we stated in *Hawkins*, supra at 483 (1), '[t]his special standard [(learned intermediary rule)] is an understandable exception to the . . . general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products."

The recent case of *Williams v. American Med. Systems*, 248 Ga. App. 682, 685 (3) (548 SE2d 371) (2001), is factually very similar to McCombs and reemphasizes the viability of the learned intermediary rule. There, a penile implant had to be removed because of infection. The strict liability claim remained viable based on the theory that tubing in the implant became disconnected and caused the infection. The failure to warn claim, however, was correctly disposed of in favor of the manufacturer because "when a device can be prescribed and inserted only by a physician, that treating physician has sole responsibility for advising the patient of dangers associated with the use of the device. The designer, manufacturer, and distributor are under no duty to the patient." Id.

While recognizing the "learned intermediary" rule, the dissent attempts to eviscerate the rule by analogizing it to the duty imposed by OCGA § 51-1-11 (c). Below, however, McCombs did not argue that the "learned intermediary" rule did not apply or should be "expanded" as argued by the dissent.

"Appellate courts review enumerations for correction of errors of law committed by the trial court — where motions or objections are properly presented for a ruling by the trial court. *Cohen v. Lowe Aviation Co.*, 221 Ga. App. 259, 261 (2) (470 SE2d 813) (1996)." *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 748 (2) (542 SE2d 151) (2000).

Therefore, the trial court's grant of summary judgment based on the learned intermediary rule was correct.

2. We find no error in granting the defaulting Synthes defendants' motion to open default as a proper case. Upon the payment of costs, as in this case, a prejudgment motion to open default under OCGA § 9-11-55 (b),

> may be opened on one of three grounds *if* four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. This court has previously held that the "showing" required by this Code section to be made "under oath" includes the showing of a "meritorious defense." Generally, the opening of a default rests within the

sound discretion of the trial court. However, compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open the default.

(Citations and punctuation omitted; emphasis in original.) *C. W. Matthews Contracting Co. v. Walker*, 197 Ga. App. 345, 346 (1) (398 SE2d 297) (1990).

McCombs contends that the state court erred in granting the motion to open default as violative of the law of the case rule because, on remand in *McCombs I*, we directed the trial court to consider any motion to open default of defaulting Synthes defendants then pending. Notwithstanding McCombs' claim to the contrary, the record shows that such a motion was then pending, having been filed on April 14, 1997, as a part of the defaulting defendants' brief in response to McCombs' motion for entry of default judgment against them. Even were this not the case, we would decline to construe our use of the word "pending" as in conflict with the state court's statutory discretion to consider a motion to open default at any time before entry of final judgment. OCGA § 9-11-55 (b).

By the verified answer in support of their renewed motion to open default, the defaulting defendants offered proof of costs paid, offered to plead instanter, and announced ready to proceed to trial. Further, they argued a proper case and set up a meritorious defense by offering evidence under oath that they were not involved in the design, manufacture, testing, or distribution of the spinal plate at issue. This was a sufficient factual statement to state a meritorious defense under the circumstances of this case.

Although McCombs attacks the sufficiency of the defaulting defendants' verified answer as verified by affidavit given upon the affiant's "best of my knowledge or belief" and not personal knowledge, the record reflects the contrary, because the affiant by her affidavit also attested to possessing "personal knowledge of each of the facts attested to in the Verified Answer." The state court did not abuse its sound discretion in determining this to be a sufficient oath to opening the default under its authority to do so as a proper case. See *Johnson v. Durrence*, 136 Ga. App. 439, 440 (221 SE2d 652) (1975) ("A judge is always required *to exercise a legal discretion*, and in order to do that, some facts must be proven before him which warrant the exercise of legal discretion.") (emphasis in original). It is also clear that the potential for manifest injustice exists in this case if default judgment is entered against the defaulting defendants in that they have duly pled what appears to be a meritorious defense. See *Berklite v. Bill Heard Chevrolet Co.*, 239 Ga. App. 791, 793 (2) (522 SE2d 246) (1999).

The sole function of an appellate court reviewing a trial court's grant of a motion to open default is to determine whether the conditions requisite to opening default have been met and, if so, to determine whether the trial court has abused its discretion in opening default case by case. *Majestic Homes v. Sierra Dev. Corp.*, 211 Ga. App. 223, 224 (1) (438 SE2d 686) (1993). Under the circumstances of this case, the state court, finding a proper case, did not abuse its discretion in opening default. See *Broadaway v. Thompson*, 127 Ga. App. 600-601 (194 SE2d 342) (1972) (broader discretion in opening default under "proper case" ground than under grounds of providential cause and excusable neglect). In light of the foregoing, we need not address McCombs' remaining claim that the grant of the motion to open default was error for want of excusable neglect.

*Judgment affirmed. Johnson, P. J., Smith, P. J., Ruffin, Miller and Ellington, JJ., concur. Eldridge, J., dissents.*

ELDRIDGE, Judge, dissenting.

In the absence of evidence showing that the Synthes defendants warned McCombs' surgeon of danger associated with the implant in issue, whether known before its implantation or acquired thereafter as here,[4] McCombs correctly argues that a jury question remains on the issue. It is well settled that the "learned intermediary" rule of *Hawkins v. Richardson-Merrell, Inc.*, 147 Ga. App. 481 (249 SE2d 286) (1978), is applicable to medical devices implanted in patients under the supervision of a physician as it is to drugs to be taken by prescription upon a rationale applicable in common, i.e., that the duty to warn the patient should rest, not with the manufacturer, designer, or distributor, but solely with the treating physician in that "the decision to employ prescription medication involves professional assessment of medical risks in light of . . . a patient's particular needs and susceptibilities. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, [521 (2) (434 SE2d 63) (1993)]." *Lance v. American Edwards Laboratories*, 215 Ga. App. 713, 716 (452 SE2d 185) (1994). Ordinarily, a warning to the learned intermediary is sufficient to satisfy the manufacturer's duty of care before a prescription drug is sold or a medically prescribed implant is installed. See generally *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga. App. 547, 549 (487 SE2d 70)

---

[4] In opposition to summary judgment, McCombs tendered the deposition of Dr. Kenneth A. Pettine, a board-certified orthopedic surgeon specializing in the spine. Dr. Pettine deposed that in November 1993 he notified the Synthes defendants by letter that he and his partner had experienced a six percent breakage rate using the implant in issue, ten of 170 such implants having failed. The complained-of surgery was performed more than a year after the November 1993 letter was sent. There also is evidence the Synthes defendants failed to investigate Dr. Pettine's reports, failed to duplicate the tests he had performed, and failed to warn treating physicians as learned intermediaries of the fracture problem.

(1997). However, after a drug has been prescribed or after a device has been implanted under a doctor's care, the learned intermediary rule should lie only to the extent that the manufacturer warned the physician and that the warning, as given, was adequate. Id. Otherwise, manufacturers have a duty to directly warn patients by all practicable means[5] of danger as to such prescription drugs as they may be taking or such implants in them under a doctor's care. Id.; compare *Davis v. Wyeth Laboratories*, 399 F2d 121, 130 (9th Cir. 1968) (manufacturer of polio vaccine required to warn consumers of risks attendant to the use of the vaccine because vaccine distributed in the absence of a physician serving as learned intermediary).

This result is not inconsistent with the duty to exercise ordinary care to warn of a known or reasonably foreseeable risk of injury or death which applies to products after they are sold notwithstanding the statute of repose abolishing such duty, a duty to warn which is distinguishable from the duty to warn before sale. See OCGA § 51-1-11 (c); *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1), 727 (4) (450 SE2d 208) (1994); see also *Love v. Whirlpool Corp.*, 264 Ga. 701, 703 (1) (449 SE2d 602) (1994); *Mack Trucks v. Conkle*, 263 Ga. 539, 544 (4) (436 SE2d 635) (1993); *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804, n. 3 (527 SE2d 882) (2000); *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997). That such a duty to warn of danger applies to ordinary products, such a duty to warn attaches to require manufacturers to warn of danger identified by post-sale knowledge acquired after the first sale of such product, particularly as to prescription drugs or implanted medical devices — this because the probability of risk of injury or death attendant to the continued use of the same is necessarily greater than that associated with products used less intimately.

The duty to warn of a reasonably foreseeable danger arising out of knowledge acquired about a product after it is first sold differs from the duty to warn before such sale for several reasons. In the period before implantation, for example, time may elapse before the product is first sold; learned intermediaries may choose not to use the product; or patients may choose not to grant informed consent after being advised of the risks involved by their learned intermediaries. However, after an implant has been sold and is in use, the nature of the danger is imminently more real and palpable

---

[5] Notice of this sort contemplates the necessity for direct notice to a known recipient, notice to hospitals or health care providers supplying the product, the surgeons involved, if known (and, if not known, then all surgeons) by advertising in the medical journals of all colleges of surgery, notice to all primary care physicians through advertisement in their professional journal or journals, or any other exercise of ordinary care required to give actual notice to the patient taking a prescribed medication or who is the recipient of a prescription implant.

in that the risk now co-exists with the patient, not unlike an unstable explosive awaiting a detonating jar or charge. Stated otherwise, before a medical device is implanted, the learned intermediary is the gatekeeper who assesses the risk and informs the prospective patient-recipient who then must give his or her consent to the implant. After implantation, the learned intermediary no longer acts as gatekeeper, because the autonomy a patient-recipient enjoys in choosing what happens to his or her body determines whether to accept the risk of surgical removal versus the risk of danger from continuing to live with the implant, physical and mental pain, as well as the cost of removal in terms of time, pain in recuperation, and money. Neither is it assured after a medical device is implanted that the learned intermediary is the best means by which to warn the patient-recipient of after-acquired knowledge of danger associated with the implant's continued use. The patient's surgeon may have died, retired, moved, or changed HMO, PPO, or other health insurance. There may be no continuing surgeon-patient relationship. Such relationship may have been terminated; the patient may have been referred back to his or her primary care physician; the patient may have changed his or her HMO, PPO, or other health insurance; or the patient may have moved away. In each instance, the learned intermediary ceases to be the best means to convey the warning to the recipient patient, requiring that manufacturers give notice of post-sale danger by the means set out above. Thus, a jury issue exists.

DECIDED JULY 13, 2001 — 

*Webb, Stuckey & Lindsey, James H. Webb, Jr., Martin C. Jones, Sharon S. Whitwell*, for appellant.

*Kilpatrick Stockton, Susan A. Cahoon, Jeffrey J. Toney*, for appellees.